### Long v. Southern Railway Company in Kentucky.

(Decided October 15, 1913).

### Appeal from Mercer Circuit Court.

1. Master and Servant—Employers' Liability Act—Negligence.—In an action by an injured employee against an interstate carrier, brought pursuant to Employers' Liability Act (35 Stat. at L. 65, chapter 149, U. S. Comp. Stat. Supp., 1909, p. 1171), it is necessary to show that the injury resulted in whole or in part from the negligence of an officer, agent or employee of such carrier, or by reason of some defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

2. Master and Servant—Employers' Liability Act—Negligence.—In an action by an injured employee against an interstate carrier, evidence examined, and held that even if the employee was injured while engaged in the work of interstate commerce, there was a failure to show that his injury resulted from any act of negligence on the part of the carrier, its officers, agents or employees, and that a peremptory instruction in favor of the carrier was proper.

C. E. RANKIN for appellant.

EDWARD P. HUMPHREY and E. H. GAITHER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, James Long, brought this action against defendant, Southern Railway Company in Kentucky, to recover damages for personal injuries. At the conclu-

sion of plaintiff's evidence the trial court directed a verdict in favor of the defendant. Plaintiff appeals.

It is admitted that defendant is a common carrier engaged in interstate commerce. At the time of his injury plaintiff was a section hand, and engaged in doing such manual labor as his foreman might direct. Defendant had on hand a large number of ties which had been carried to and stacked in its yards at Lawrenceburg. At the time of the accident plaintiff and two others were loading some of these ties on a flat car. The ties were to be carried and distributed at certain points along its line of railway. From these points they were to be loaded on a push car and distributed along the side of the track at various points, where they were to be used in replacing the ties that were found defective. There were three employees engaged in loading the ties, and their manner of doing the work was as follows: Two of them caught hold of the front end of the tie, while the third caught hold of the rear end. Then in concert the three gave a swing and let the tie go at the same time. By this swing the tie was carried far enough upon the deck of the car for other men on the car to seize it and place it in proper position. The ties that were being handled had been out in the rain for sometime and were wet and slick. When plaintiff was injured, he and a negro by the name of Donehi had hold of the front end of the tie. Dick League had hold of the rear end. In giving an account of his injury, plaintiff took a stick and explained how he was injured, in the following language:

"Ans. Well, like this was the end of the tie, and this table like the flat car; League had hold of this end out here, and me and Donehi was hold of this end out here, at this end at the car. I was on the same side of the tie as I am of this stick, and Donehi was opposite me, just this way (indicating) Donehi was over here facing me. We raised up the tie and walked to the car with it, and as we went to raise it up and pitch it on the car, it slipped just as we was in the swing. League kinder twisted it and it turned right over on my side, and of course I couldn't get out of the way, and it caught my finger, and cut the end of it off on the edge of the flat car.

"Q. Just show how it was done.

"Ans. It just caught my finger just that way (indicating).

"Q. On what part of the car?

"A. On the edge of the car and left it lying there.

"Q. Just show the jury how you lifted that tie—did you swing it?

"Ans. We was just in the swing when it turned, and it throwed all the weight over on me."

Further along plaintiff was interrogated by the court, and testified as follows:

"You say there were three of you lifting this tie?

"Ans. Yes, sir.

"Was it in the swing that caused it to turn?

"Ans. Yes, sir.

"What caused it to turn?

"Ans. On account of it being slick. It had a round corner, and Mr. League had hold of the back end of the tie, and Donehi and me was at this end, and they let it turn and caught me."

On cross-examination witness stated that he had been in the service of the company about eight months. He understood the loading of ties, and knew of the dangers incident thereto. Richard League, another witness for the plaintiff, describes the incident as follows:

"Ans. There were three of us loading them; Jim Long and Frank Donehi was at one end and I was at the other—I was carrying the back end of it; when we got to the flat car, we aimed to make a swing; an easy up swing; the tie was slick—had a round corner, and it slipped and turned on Jim's side and cut his finger.

"Q. It slipped in your hand and turned on to him?

"Ans. Yes, sir.

"Q. Was that when his finger was hurt?

"Ans. Yes, sir.

### CROSS-EXAMINATION.

"Q. How long have you been working on the railroad?

"Ans. The 16th of August, it will be three years.

"Q. You have handled ties a good deal?

"Ans. Yes, sir.

"Q. And know how to handle them?

"Ans. Yes, sir.

"Q. You were using every precaution to keep from hurting this man?

"Ans. Yes, sir.

"Q. Was there any way that you could have prevented that from slipping?

"Ans. No, sir.

RE-EXAMINATION.

"Q. How do you know there wasn't?

"Ans. You couldn't hold it.

"Q. It slipped out of your hand and turned?

"Ans. It kinder turned in my hand.

"Q. It turned enough to start it over on him?

"Ans. Yes, sir."

H. H. Houchens, the foreman in charge of the work, testified that the ties in question were to be shipped away and put in the track. They were not to be taken very far; probably not over a mile or two. When the accident occurred he was on the top of a flat car with four or five men. Plaintiff and others came up with the tie and he saw them pitch it up. He then heard Long say "Cap, they've cut my finger off."

Counsel for plaintiff insist that plaintiff, at the time of his injury, was engaged in employment which was absolutely necessary to expedite and carry on the interstate commerce of the defendant, and that the foregoing evidence is sufficient to make out a case under the Employers' Liability Act of April 22, 1908, which is found in 35 Stat. at L., 65, chap. 149, U. S. Com. Stat. Supp., 1909, p. 1171, and the amendment of April 5, 1910, 36 Stat. at L., 291, chap. 143. Whether or not plaintiff was engaged in the work of interstate commerce at the time he was injured, we deem it unnecessary to decide, in view of our conclusion that the evidence is insufficient to take the case to the jury even if the Employers' Liability Act applies. While it is true that the Employers' Liability Act has abrogated the fellow servant doctrine, and that the contributory negligence of the injured employee does not bar a recovery, but simply diminishes the damages in proportion to the amount of negligence attributable to such employee, yet it is still necessary to show that the injury resulted in whole or in part from the negligence of the officers, agents or employees of the carrier, or by reason of some defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves or other equipment. It is not insisted that the injury resulted from any defect or insufficiency in defendant's cars, engines, appliances, machinery, track, road-bed, works, boats, wharves or other equipment. Therefore, plaintiff's whole case depends on whether or not plaintiff's injury resulted in whole or in part from some act of negligence on the part of those working with him. The evidence in

the case before us shows that the tie was handled in the usual manner. It fails to show that the injury was due to any failure of duty on the part of defendant's employees, or that the accident could have been prevented by handling the tie in a different manner. On the contrary, every witness says that the tie turned merely because it was wet and slippery. Indeed, all the facts and circumstances make it plain that plaintiff's injury was the result of a mere accident which could not have been anticipated or prevented by ordinary prudence on the part of those working with him. Therefore, if we assume for the purpose of this case that the plaintiff was engaged in interstate commerce work, and that the Employers' Liability Act applies, no liability on the part of defendant is shown, as the evidence fails to disclose that the injury was due to any negligence on the part of defendant's servants. We, therefore, conclude that the trial court properly directed a verdict in favor of the defendant.

Judgment affirmed.