## Louisville & Nashville Railroad Company v. Oliver, by, etc.

(Decided March 20, 1925.)

### Appeal from Lee Circuit Court.

Master and Servant—Section Hand Held to Assume Risk of Rail Springing.—Section hand, with others engaged with lining bars in pushing rail out in middle in order to bend or spring it into

place, held to have assumed risk as ordinary, open, obvious, and inherent in nature of work, where rail sprung back causing his lining bar to strike him heavy blow.

ROSE & STAMPER, HUNT, NORTHCUTT & BUSH and WOOD-WARD & WARFIELD for appellant.

J. MOTT McDANIEL and SHACKELFORD MILLER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

For a short while prior to September 30, 1921, the appellee had been working for appellant as a section hand on its railroad in Lee county. On that day the. section gang of which he was a member was employed in fixing the track near St. Helens. In so doing, they removed from the track a worn rail, and at the time of the accident complained of were replacing it with a new rail 33 feet long and weighing about 900 pounds. This new rail was 1½ inches longer than the old one and had to be "bucked" or sprung into place. This was done, according to custom, by bolting and splicing the new rail at one end, holding it at the other and then bending or springing it outward in the center with lining bars until the loose end slid into place. Six men, of whom the foreman was one, were at work in this gang. One of them and the foreman were at the loose end. The other four men, including appellee, were in the middle, pushing the rail out with their lining bars. Appellee claims that while the rail was sprung to the edge of the ties, it was allowed to come back upon him with such force as to cause the lining bar he had in his hands to give him a sharp and heavy blow over the heart from which he has suffered very serious results. The evidence is very meager as to just what caused this rail to spring back if it did. The other three workmen, who were springing this rail with appellee, were behind him and he did not see what they did. He says that he supposed they loosed their holds. Another witness, White, says that in this character of work the rail springs back when "the holds give back," and further, that the holds when they are springing rails sometimes give away. Walker Coomer's testimony is to the same effect. Appellee, in describing how the work was done, said, in substance, that this rail was sprung just as one would roll logs. It appears from what testimony we have in the record, that it

was not unusual for these holds to slip in doing this character of work, and that in springing the rail it was necessary for the men to get a new hold from time to time, in which event, of course, the pressure they were exerting on the rail would necessarily cease pending the change of hold. Of course when a rail is sprung like this rail was, the slightest relaxation of the pressure upon it will have a tendency to cause it to spring back. Where four men are pressing against a rail, the pressure of the four men will not be uniform, due to their differences in strength and power. If one presses a little harder than another this will have a tendency to cause the latter's hold to become loose. The danger of the holds thus slipping, or of a relaxed pressure due to the change of holds, was open and obvious and inherent in the very nature of the work to be done and hence an ordinary risk of the employment which appellee assumed. In the very similar case of Sinclair's Admr. v. Illinois Central R. R. Co., 140 Ky. 152, 130 S. W. 978, a section gang was engaged in removing crossties from the track. The old ties were drawn out by men sticking their picks into the ties and pulling them out. While they were so engaged the foreman stuck his pick in a tie just outside the rail, and the decedent and another stuck their picks into the tie just behind him. As they pulled the tie the foreman's pick came out and swung behind him, striking the decedent. The top of the tie was somewhat decayed but the pulling was done in the customary manner, and there was no proof that the foreman was not handling his pick as usual or that he was not giving attention to his work or did not make an effort to keep his pick from swinging back. It further appeared that it generally happened in pulling a tie out that when the point of a pick got even with the person using it, it would come out of the tie and swing behind him. The court held that the injuries received by decedent were due to an accident which was one of the ordinary risks of employment and which the decedent assumed.

In Truesdell v. C. & O. Ry. Co., 159 Ky. 718, 169 S. W. 471, appellant was injured when a rail which he and other members of a section gang were carrying bounded and hit him when dropped on the ground, as was customary in doing this character of work. It was held that appellant assumed the risk of this happening, as he must

necessarily take notice of the law of nature that heavy objects when dropped may slip or rebound.

In Jones v. Southern Ry. in Ky., 175 Ky. 455, 194 S. W. 558, it was held that a section hand engaged in replacing crossties under rails assumed the risk of small portions of ice or cinders clinging to the ties flying off and striking him when struck with a pick. See also L. & N. v. Boone, 138 Ky. 700, 128 S. W. 1087.

Many other cases might also be cited, but they all establish under the varying circumstances of their facts that the servant assumes the ordinary risks, open, obvious and inherent in the nature of the work.

Such was the risk in this case which caused appellee's accident and injury. The appellant's motion for a peremptory instruction, therefore, should have been sustained.

Judgment reversed with instructions to grant appellant a new trial in accordance with this opinion.