## CHESAPEAKE & O. RY. CO. v. YATES.

Court of Appeals of Kentucky.
March 20, 1951.

Rehearing Denied June 22, 1951.

Browning & Gray, Ashland, Combs & Combs, Prestonsburg, for appellant.

Joseph D. Harkins, Sr., Joseph D. Harkins, Jr., Prestonburg, for appellee.

MILLIKEN, Justice.

This action was brought by Bossie Yates as administratrix of the estate of Henry Yates, deceased, against The Chesapeake and Ohio Railway Company to recover damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. for the negligent injury of her husband, Henry Yates, during his employment as a section hand. The alleged injury occurred on the morning of May 23, 1945, and the employee worked only a few minutes thereafter. That evening he was taken to a hospital and was operated upon with death resulting a week later on May 30, 1945. The operation disclosed a torsion or thrombosis of the mesentery with a resulting gangrenous involvement of about five feet of the small intestines.

This suit was filed three years after the alleged injury, and at the first trial plaintiff obtained a verdict for $25,000 which the court set aside as excessive. The second trial resulted in a verdict for $7,000. The principal ground urged for reversal of the judgment entered upon that verdict is the failure of the court to direct

a verdict for the defendant, the Railway Company, because no negligence was established nor causation proved.

The petition alleges that the deceased, Henry Yates, was a member of a section crew engaged in lifting a switch point from a railroad car. The allegation is that "the other members of said section crew working with the said Henry Yates negligently and carelessly *let go* of said switch point and upon their *letting go* of said switch point, the switch point turned over and the entire weight thereof was thrown onto and against the said Henry Yates, hitting him in the stomach and with such force * * *" (Emphasis ours) that the injury resulted. The switch point is a rail thirty feet long and weighing about 1,300 pounds. It is tapered to a point at one end, the tapering extending back about fifteen feet. There are "cups" or "bridle bars" jutting out a few inches from the sides of the rail, and it is one of these which it is asserted struck the employee in the abdomen.

The evidence revealed that there were seventeen or eighteen men in the railroad car, which was described as a gondola type, and it was their collective intention to lift the switch point over the side of the car and let it fall to the ground. It was admitted that there were enough men assigned to the job to accomplish it. In testifying for the plaintiff one of the employees who was standing next to Henry Yates stated: "We got the switch point up and was getting ready to throw it over the side of the car and it turned back up the way it was when it was laying in the car, and when it turned that throwed the bridle bar in next to us." This witness testified that he had hold of the bar when it turned, that he saw it hit Henry Yates, but when asked, "Did you do anything there to cause it to turn?" he answered: "No, sir, I didn't, and I never saw anybody do anything. It *gradually* turned up there * * *. Yes, sir, it was turned down like this (demonstrating to the jury) and it *gradually* turned back up like this (demonstrating to the jury)." (Emphasis ours.) This witness stated that the piece which struck Henry Yates in the stomach was about two or three inches long, and that all of the men had hold of the switch point, including Henry Yates, and that "there wasn't a man that turned *loose of it until it was throwed over the side of the car.*" A second witness essentially confirmed this testimony, and a third witness testified that he felt the switch point turn in his hand, that he didn't see it strike Henry Yates, that he heard Yates complain about it, *that none of the men turned loose of it,* and that he didn't know what caused it to turn. This was all the evidence offered by the plaintiff to prove negligence on the part of her husband's fellow workers and the Railroad Company. (Emphasis ours.)

The defendant introduced the foreman of the section crew and four of the crew members. They all testified that the rail did not turn or slip, that no one let go of it, and that the method employed in unloading it was the usual and customary one.

From the medical viewpoint the two surgeons who performed the operation upon Mr. Yates declared that they found he had torsion of a segment of the mesentery with a complete lock of at least sixty inches of the small intestines. The mesentery is a fold of peritoneum which gives support and supplies blood to the intestines. These surgeons declared that they found no indication either on the outside or inside of the patient's abdomen to indicate that any trauma had occurred. They stated that they were unable to express any opinion as to the cause of the decedent's illness or the condition from which he was suffering, but both testified that his condition was not the result of any physical or traumatic injury. One of the surgeons testified that it was possible a blow could have caused the condition the patient had, but that it was not probable. A third physician who had testified in behalf of Mrs. Yates declared that a blow could have caused such a condition, but that it was highly improbable. The defendant also offered evidence from two of the deceased man's relatives that he had been suffering

from an unknown digestive disturbance for some time and this was confirmed by other witnesses.

From the foregoing résumé of the evidence, we conclude that no negligence was established. Whatever turning or twisting occurred was so "gradual" that none of the men let go of the rail, and the most that can be gleaned from this testimony is that there may have been a little pressure exerted against the abdomen of Henry Yates, but it could not be described as a blow. The testimony fails to show that the injury, if there was one, was caused by any failure of duty on the part of the defendant's employees or that the manner of handling the rail was unusual.

In a case where an employee was injured because a tie turned merely because it was wet and slippery and where the evidence showed that the tie was handled in the usual manner and no fellow employee failed to do what was required of him under the circumstances, we held that there was no negligence upon which to base a recovery under the Federal Employers' Act. Long v. Southern Railway Co., 155 Ky. 286, 159 S.W. 779. To the same legal effect see Sinclair's Adm'r v. Illinois Central R. Co., 140 Ky. 152, 130 S.W. 978; Louisville & N. R. Co. v. Oliver, 210 Ky. 25, 275 S.W. 367; Scott v. Norfolk & Western Ry. Co., 100 W.Va. 88, 130 S.E. 98.

The medical evidence offered to support the petition did not establish a causal connection between the alleged accidental injury and the death which followed. On the contrary, the medical testimony disclosed no evidence of trauma. In fact, the evidence of the physicians practically removed any doubt but that Mr. Yates' condition was the product of natural causes. This court has often written that speculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation as to how an injury occurred. See Kentucky Digest, Negligence, ☞26, 134, 136 for collection of cases; Shearman-Redfield on Negligence, Section 46; Gross v. Kelly, Ky., 236 S.W. 2d 930; Burk Hollow Coal Co. v. McCulley's Adm'r, 290 Ky. 435, 161 S.W.2d 622.

For the reasons stated, we are of the opinion that no negligence was established in the first place and that, even if we assume that negligence had been proved, the causal connection between the alleged negligence and the resulting death was not established by the testimony. The motion of the defendant for a directed verdict should have been sustained.

Judgment is reversed.