RENDERED:  JUNE 25, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0197-MR

SCOTTY HEDGESPETH AND LINDA
CUNDIFF                                                                          APPELLANTS


                           APPEAL FROM TAYLOR CIRCUIT COURT
v.              HONORABLE ALLAN RAY BERTRAM, JUDGE
                           ACTION NO. 15-CI-00178


TAYLOR COUNTY FISCAL COURT
MEMBERS, IN THEIR OFFICIAL
CAPACITIES:  COUNTY/JUDGE
EXECUTIVE EDDIE ROGERS,
MAGISTRATE ED GORIN,
MAGISTRATE JAMES JONES,
MAGISTRATE JOHN GAINS,
MAGISTRATE MATT PENDLETON,
MAGISTRATE RICHARD PHILLIPS,
MAGISTRATE TOMMY CORBIN;
ANTHONY HASH; JOHN
HEDGESPETH; MARILYN ALTMAN;
RAY ALTMAN; RAY ALTMAN, JR.;
AND VANGIE ALTMAN                                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, KRAMER, AND K. THOMPSON, JUDGES.

COMBS, JUDGE: This case involves a land dispute arising from the proposed construction of a new bridge in Taylor County. Scotty Hedgespeth and Linda Cundiff, his wife, appeal a summary judgment of the Taylor Circuit Court entered in favor of neighboring landowners and the Taylor County Fiscal Court. The circuit court held: that Taylor County did not take property owned by Hedgespeth and Cundiff in its construction of a new bridge across Jones Creek; that the new bridge lies within a county road boundary; and that the neighboring landowners and the fiscal court were entitled to judgment as a matter of law. After our review, we affirm.

Hedgespeth and Cundiff own property at what is known as Jones Creek Road in Taylor County. At the time this litigation commenced, the road at issue proceeded northward from KY 1252 (White Rose Road) until it reached Jones Creek, where it forked. The western fork crossed a narrow, awkwardly situated bridge. Vehicles often avoided the narrow bridge by using the earlier established eastern fork, which crossed the usually shallow creek through the stream bed. A concrete slab had been poured on the north bank of the creek to facilitate access back onto the paved roadway as it continued northward.

On June 26, 2015, Hedgespeth and Cundiff filed an action to quiet title against the Taylor County Fiscal Court and its individual members in their

official capacities. In their verified complaint, Hedgespeth and Cundiff alleged that Jones Creek Road in Taylor County and nearby property that the county sought to use for construction of the new bridge across Jones Creek (the alternate route through the creek bed) were their unencumbered property. They stated that the portion of the roadway that had originally forded Jones Creek had been abandoned following the grading and graveling of a new path along the western bank of the creek in the mid-1950's. They explained that the new path along the bank of the creek had been paved in the late-1970's and that Hedgespeth's predecessor in title, his late father, had given landowners farther north of KY 1252 permission to use the road in order to access their property.

Hedgespeth and Cundiff also sought a declaratory judgment indicating that the fiscal court could acquire an ownership interest in the disputed property only by way of Kentucky's Eminent Domain Act, codified at KRS[1] 416.540, *et seq*. Finally, pursuant to the provisions of CR[2] 65.04, Hedgespeth and Cundiff requested the trial court to issue a temporary injunction to stop construction of the new bridge pending a determination of the ownership of the land where the bridge would be built.

---

[1] Kentucky Revised Statutes.

[2] Kentucky Rules of Civil Procedure.

The Taylor County Fiscal Court filed a timely answer. It averred that Jones Creek Road had been listed as a county road and that it had been treated as such by the public at large and by the county for decades, encompassing both the narrow bridge over Jones Creek (including its paved approaches) and the alternate public thoroughfare crossing the streambed of Jones Creek. It also alleged that Jones Creek Road had been used by the public as a matter of right, "including the dual path traversing directly through the creek and on the paved portion of the roadway across the present bridge" for more than fifty years. The fiscal court indicated that it had undertaken all measures to replace the existing bridge over Jones Creek with a bridge spanning the stream where vehicular traffic had previously crossed directly through the creek bed. It denied that Hedgespeth and Cundiff had any authority to delay or impede the fiscal court in its duty to improve Jones Creek Road, and it objected to their motion to enjoin construction of the new bridge.

On August 7, 2015, the Taylor Circuit Court conducted a day-long evidentiary hearing on the motion for a temporary injunction. In an order entered on August 25, 2015, it denied the motion. Hedgespeth and Cundiff immediately filed a motion in this Court for interlocutory relief pursuant to the provisions of CR 65.07. In an order entered October 7, 2015, we denied the motion for relief,

holding that the trial court had not abused its discretion by refusing to enjoin the proposed bridge construction.

Hedgespeth and Cundiff immediately sought interlocutory relief from our order in the Supreme Court of Kentucky pursuant to the provisions of CR 65.09. In an order entered on May 5, 2016, the Supreme Court also denied their motion.

The Supreme Court reiterated the standard governing a trial court's review of a motion for temporary injunction as prescribed by the provisions of CR 65.04. A trial court can order injunctive relief only where it finds:

> (1) that the movant's position presents "a substantial question" on the underlying merits of the case . . .; (2) that the movant's remedy will be irreparably impaired absent the extraordinary relief; and (3) that an injunction will not be inequitable[.]

*Price v. Paintsville Tourism Comm'n,* 261 S.W.3d 482, 484 (Ky. 2008).

Evaluating the evidence presented to the trial court during the injunction hearing, the Supreme Court held that the deeds and maps admitted as exhibits to testimony "strongly supported a finding that Jones Creek Road was publicly used, as opposed to being a private road surrounded by private property." It observed that the evidence showed that the fiscal court "had previously treated both forks as part of the county road" and that it had maintained them both. It determined that the trial court's conclusion that Hedgespeth and Cundiff had not

shown a substantial likelihood of prevailing on the underlying merits was not clearly erroneous and that this court had not erred in its review of that conclusion.

Next, the Supreme Court evaluated the trial court's conclusion that Hedgespeth and Cundiff had not shown that they would suffer irreparable harm if an injunction did not issue. The Court noted that there had been testimony that vehicular traffic already used the bypass through the creek bed to avoid using the old bridge and that construction of a new, safer bridge at the same location would not result in a change to the way the property was then being used. Additionally, the trial court concluded that if the road in question is determined to be private property rather than a county or public road, then Hedgespeth and Cundiff could be adequately compensated for the taking through the recovery of monetary damages.

The Supreme Court agreed that intrusion onto property found to belong to Hedgespeth and Cundiff by agents of the Taylor County Fiscal Court could, indeed, be redressed through an action for damages. Consequently, there could be no irreparable injury. Finally, the Court determined that the equities did not weigh in favor of Hedgespeth and Cundiff but rather in favor of public safety and construction of the new bridge. The Supreme Court (Venters and Noble, J.J. dissenting) affirmed this Court's decision denying the request for interlocutory relief. The bridge was built, and discovery in the underlying action followed.

In May 2018, the circuit court rendered a scheduling order. The matter was set for trial in August 2018. The parties exchanged witness and exhibit lists. The fiscal court identified the ownership of the property underlying the newly constructed bridge as the sole issue of fact to be decided at trial. If it were found that a taking had occurred, only then would the additional issue of damages need to be addressed.

On July 2, 2018, Ray Altman, Marilyn Altman, Ray Altman Jr., Vangie Altman, John Hedgespeth, and Anthony Hash -- neighboring landowners -- filed a motion to intervene and tendered an intervening complaint. In their motion, the neighboring landowners contended that access to their property was dependent upon the public nature of the disputed roadway. In the alternative, they alleged that they had acquired "a prescriptive right of ingress and egress by Jones Creek Road." The trial court granted the motion and ordered the intervening complaint filed. The jury trial was re-scheduled for July 2019.

On May 31, 2019, the neighboring landowners filed a motion for partial summary judgment. The motion was accompanied by an extensive memorandum of law and the affidavits of numerous former county judge-executives, magistrates, landowners, and county road maintenance employees. Various deeds of conveyance and maps were attached as exhibits.

In their motion, the neighboring landowners argued that they were entitled to judgment as a matter of law because Jones Creek Road is either a county road or a public road. In the alternative, they contended that they had acquired prescriptive easements and a right to use the road. They denied that the road had ever been blocked or that they had sought or been given permission to use either fork of the road by any other neighboring landowner.

In their response, Hedgespeth and Cundiff conceded that there had been a county road "referred to as Jones Creek or Jones [R]oad in the history of this area." However, they argued that "the part of the right of way that is the subject of this action is not, in fact, the same road which has been historically mentioned." They argued that this genuine issue of material fact precluded entry of summary judgment. CR 56.

The affidavit of Scotty Hedgespeth was attached to the response. He declared that the entire south section of the roadway (both forks) referred to as Jones Creek Road had been abandoned years ago and that the property should have reverted to adjacent landowners. While he admitted that the southern portion of the roadway "was in and out of the creek bed," he indicated that the road had not been maintained with public funds. Hedgespeth explained that only the northern portion of the roadway had been maintained with public funds and that this was the county road referred to in the relevant deeds.

Following extensive oral arguments, the circuit court granted summary judgment on January 16, 2020. The court observed that the fiscal court identified and adopted a comprehensive list of its county roads in June 1991. Included in the list of county roads and the officially adopted and published county road map was Jones Creek Road, running from its intersection with White Rose Road in a northly direction for a distance of 1.05 miles. The county road then included both its path through the creek (the site of the new bridge) and a second path over the old bridge. Numerous affidavits indicated that Jones Creek Road had -- in fact -- been maintained with public funds for decades. The court observed that Hedgespeth and Cundiff had submitted no evidence to support their claim of ownership of any part of the road, and it rejected the premise that the "northern" section of the roadway "if indeed it existed at one time" was relevant to the action. The court determined that "Jones Creek Road is a county road with a location that begins at White Rose Road and continues for a distance of 1.05 miles, to cross the creek at the location of the newly installed bridge" and that no property owned by Hedgespeth and Cundiff had been taken for the construction of the bridge. Because there were no genuine issues of material fact, it concluded that the fiscal court and the neighboring landowners were entitled to judgment as a matter of law. This appeal followed.

A motion for summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstance. *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46 (Ky. 2002). We review the trial court's decision to grant summary judgment *de novo*. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014).

We must consider whether the circuit court erred by concluding that there were no genuine issues as to any material fact and that the fiscal court and the neighboring landowners were entitled to judgment as a matter of law.

On appeal, Hedgespeth and Cundiff argue that the circuit court erred by granting summary judgment in favor of the fiscal court and the neighboring landowners because the southern portion of what is commonly referred to as Jones Creek Road (including the location of the new bridge) is not the county road referred to in deeds, maps, and the other documents presented. Instead, they claim that the public portion of the road lies well north of the newly constructed bridge and that it does not encompass the private passways that cross their land or that deed references to a county road refer to KY 1252.

In the alternative, they argue that if the county acquired a legally enforceable easement, the court erred by assuming that the easement could be enlarged to accommodate the new bridge because it increases the burden upon their property. Finally, Hedgespeth and Cundiff argue that the trial court erred by dismissing the entire action because the only motion before the court was one for *partial* summary judgment filed by the neighboring landowners. They contend that the trial court was obligated to consider their claim for damages as a result of the taking because the fiscal court did not file a dispositive motion with respect to their reverse condemnation claim. We disagree with these contentions.

The issues on appeal are resolved by a single analysis: whether the circuit court erred by concluding that no genuine issue of material fact existed with respect to whether the property underlying the new bridge was a county road. If it did not, there was no taking and the fiscal court and the neighboring landowners are entitled to judgment as a matter of law. We conclude that the court did not err by concluding that the property underlying the new bridge was a county road.

The arguments presented by Hedgespeth and Cundiff with respect to the disputed roadway have metamorphosed somewhat over the course of these proceedings. In their complaint, Hedgespeth and Cundiff indicated that the portion of the original roadway that traversed the creek bed had been abandoned following the creation of a new passway along the western bank of the creek. However, after

-11-

their motion for an injunction was denied and that decision was affirmed on review, Hedgespeth and Cundiff argued that the southern portion of the roadway (including the location of the new bridge) is not the Jones Creek Road referred to in deeds, maps, and other documents. Nevertheless, no genuine issue of material fact prevents the entry of summary judgment.

All evidence indicates that Jones Creek Road, including the passway through the creek, has been continuously listed on the county road map since 1991, reflecting that it was adopted by the fiscal court as a county road at least as of that year. The evidence is uncontroverted (except by the unsupported allegations of the Appellants) that the county has maintained the road since that time. It is also uncontroverted that the alleged "northern" section of Jones Creek Road lies outside the mapped area; that it is unrecognizable as a roadway; and that it has never been maintained or claimed by the county. Moreover, it is irrelevant to the controversy concerning ownership of the "southern" portion of the roadway at the center of this litigation. Affidavits indicating that Hedgespeth's predecessor in title acknowledged that Jones Creek Road was a county road are also uncontroverted, and relevant deeds all reference the "county road" as an established landmark. Finally, the single deed offered by Hedgespeth and Cundiff as proof of their ownership of the disputed property was acquired by them **after** commencement of the litigation.

A movant bears the initial burden of convincing the court through evidence of record that no genuine issue of fact is in dispute. The burden then shifts to the party opposing summary judgment to present at least some affirmative evidence showing that there is a genuine issue of fact to be resolved at trial. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury[.]" *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

The neighboring landowners and the fiscal court met their burden of showing that no genuine issue of material fact had been presented. In response, Hedgespeth and Cundiff failed to produce any evidence -- except speculation -- upon which a trier-of-fact might reasonably find in their favor. Consequently, the trial court did not err by granting summary judgment.

We AFFIRM the entry of summary judgment by the Taylor Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Dawn L. McCauley
Lebanon, Kentucky

BRIEF FOR APPELLEES RAY
ALTMAN, MARILYN ALTMAN,
RAY ALTMAN, JR., VANGIE
ALTMAN, JOHN HEDGESPETH
AND ANTHONY HASH:

Craig Cox
Campbellsville, Kentucky

BRIEF FOR APPELLEE TAYLOR
COUNTY FISCAL COURT:

John D. Bertram
Campbellsville, Kentucky