RENDERED: OCTOBER 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1034-MR

DANIEL O. CECIL, SR.                                                APPELLANT


                        APPEAL FROM MARION CIRCUIT COURT
v.                       HONORABLE KAELIN REED, JUDGE
                        ACTION NO. 19-CI-00087


JOSEPH KEITH BICKETT AND
JAMES A. BICKETT                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE: The Appellant, Daniel O. Cecil, Sr., ("Cecil"), brings this appeal seeking reversal of the Marion Circuit Court's August 13, 2021 order granting summary judgment in favor of the Appellees, Joseph Keith Bickett ("Bickett") and James A. Bickett ("James"). Cecil asserts the trial court erred when it concluded that he failed to come forward with sufficient evidence of malice to support his claim of wrongful use of civil proceedings. Cecil requests us to reverse the trial

court's order and remand his claim for further proceedings. Having reviewed the record and being otherwise sufficiently advised in the law, we affirm.

## I. BACKGROUND

In 1988, Bickett transferred certain real property ("the Properties")[1] to Cecil and his wife, Kathleen.[2] The deeds of transfer indicate that the Properties were transferred in fee simple. According to Bickett, however, the transfers were subject to an agreement between the parties that Cecil would return the Properties to Bickett at a later date upon his request. To the extent such an agreement was ever made between the parties, it was never reduced to writing.

Bickett claims he made the transfers because he was suffering from a serious cocaine addiction at the time, was not competent to manage the Properties appropriately, and wanted Cecil to care for them until Bickett was in a better position to do so himself. According to Cecil, the transfers were outright sales.

As it turned out, in 1989, the year following the transfers, Bickett was in fact arrested and charged with drug trafficking and related offenses in violation of federal law. *United States v. Bickett*, 943 F.2d 53, 1991 WL 175285 (6th Cir.

---

[1] The Properties are comprised of two farms, the Votaw farm and the Thompson farm. There is a separate deed of transfer for each farm.

[2] While Kathleen's name appears on the deeds, she is not a party to the underlying suit. Kathleen's inclusion on the deeds of transfer has no legal effect on the outcome of this appeal. As such, given that she is not a party to the claim under review, throughout the remainder of this Opinion we refer to the transfers as having been to Cecil.

Sep. 10, 1991). Bickett was ultimately convicted and sentenced to serve a considerable amount of time in federal prison; in addition, as part of his sentence, Bickett was also assessed a fine and forfeiture of certain property the government claimed was used in furtherance of the crimes for which Bickett was convicted. *Id.* In conjunction with his federal criminal case, Bickett was required to list all his assets. Despite listing other properties, including some that he had formerly owned, Bickett did not disclose any interest in the Properties. As a result, the fine assessed against Bickett was lower than it might have been had the value of the Properties been included among Bickett's assets, and Bickett was granted pauper status as part of his direct appeal to the Sixth Circuit Court of Appeals.[3]

In 2005, prior to Bickett's release from prison, Cecil deeded a small amount of acreage from one of the Properties to James, Bickett's son. After Bickett was released from prison in 2011, Cecil deeded an additional portion of the remaining Properties back to Bickett. Neither James nor Bickett paid Cecil any money in consideration for these transfers.

---

[3] Bickett's assets were listed in his presentence investigation report (PSI). The PSI report did not include the Properties among Bickett's assets. Bickett did not contest the PSI report as related to his assets. Bickett was facing a fine of up to $400,000 but was only assessed a fine of $17,500 based, in part, on the assets listed on his PSI report. *See* 18 United States Code § 3572(a)(1) ("[T]he defendant's income, earning capacity, and financial resources" are among the factors a federal sentencing court should consider in determining the amount of a fine.).

Not satisfied with the partial transfers, Bickett continued to press Cecil to transfer the remaining acreage to him.[4]  In 2012, after Cecil refused to deed any more acreage to him, Bickett filed a civil suit against Cecil and his wife, Marion Circuit Court Civil Action No. 12-CI-00114 ("2012 suit").  Bickett alleged that in breach of the parties' oral agreement and his duties as a constructive trustee of the Properties, Cecil had mismanaged the Properties and refused to turn over the remaining acreage to him.  Bickett sought to recover the Properties, to the extent they were still owned by Cecil, and associated damages.

In addition to denying the existence of any oral agreement, Cecil pled several affirmative defenses including the merger doctrine, issue preclusion, unclean hands, accord and satisfaction, statutes of limitations, and statute of frauds. The trial court ultimately granted summary judgment to Cecil.  Bickett appealed the trial court's judgment to this Court.  *Bickett v. Cecil*, No. 2014-CA-001985-MR, 2017 WL 6062120 (Ky. App. Dec. 8, 2017), *disc. rev. denied* (Apr. 18, 2018). Cecil's arguments in his present appeal are predicated entirely on the holdings and related statements in this prior Court's opinion affirming summary judgment in the 2012 suit.  However, it is important to recognize that, like the trial court in the 2012 suit, this Court never attempted to make a factual determination regarding

---

[4]  Although not relevant to this appeal, Cecil had previously deeded some of the acreage to third parties.  Bickett asserted that these transfers were done without his authorization and in violation of Cecil's duty as a constructive trustee of the Properties.

whether Bickett and Cecil had actually entered into an oral trust agreement regarding the Properties. In fact, we reviewed the prior appeal based on the assumption that the parties did in fact make some such agreement. *Id.* at *6 ("[I]f the Cecils hold the farms pursuant to an oral trust agreement as Bickett now claims . . .").[5] We then explained that even if such an agreement had existed, Bickett was judicially estopped from relying on it because he had taken inconsistent positions regarding his ownership of the Properties in federal court, which worked to his advantage. *Id.* at *6-7. Likewise, we determined that, in assessing the amount of Bickett's fine and in later granting Bickett *in forma pauperis* status, the federal courts determined that Bickett did not have an interest in any real property, barring Bickett from relitigating the ownership issue in state court. *Id.* at *7. Alternatively, we held that the merger doctrine worked to prevent Bickett from relying on any alleged agreements not contained within the deeds of transfer. *Id.* at *8. Bickett then sought discretionary review from the Kentucky Supreme Court. On April 18, 2018, our Supreme Court denied review and ordered this Court's opinion not to be published.

---

[5] Likewise, no determination has ever been made regarding Cecil's complicity, or lack thereof, in taking title to the Properties. The Properties are comprised of two separate farms, the 69-acre Votaw farm and the 196-acre Thompson farm. While the federal government was most certainly aware that Bickett transferred the Votaw farm to Cecil, it appears that the federal government mistakenly believed that the Votaw farm comprised the total acreage of Bickett's prior real estate holdings, when in fact, the farms were separate parcels with separate deeds of transfer. Neither Bickett nor Cecil, who was named as a defendant in a civil forfeiture proceeding for the Votaw farm, sought to clear up the government's misapprehension in this regard.

Approximately one year later, on April 17, 2019, Cecil commenced the underlying lawsuit by filing a verified complaint against Bickett and James in Marion Circuit Court.[6] Cecil alleged that Bickett "instituted [the 2012 suit] knowing that it had no merit for the sole purpose of causing [Cecil] damages, which he has sustained." Cecil demanded recovery of compensatory damages based on the wrongful use of civil proceedings and abuse of process.[7]

The trial court gave the parties until November 20, 2020, to complete pretrial discovery. Following the expiration of the pretrial discovery period, Cecil moved the trial court to set the matter for a pretrial conference and for trial. By order entered July 20, 2020, the trial court set the matter for a pretrial conference on December 17, 2020. In that order, the trial court also reminded the parties that discovery was set to close on November 20, 2020, remarked that the factual record in this action appeared to be underdeveloped, and cautioned that "additional proof and discovery [beyond the 2012 suit] will likely be necessary to create a record[.]"

---

[6] James did not join in as a plaintiff in the 2012 suit when it was originally filed. However, he later sought to intervene as a plaintiff based on having a derivative interest in the Properties by virtue of the fact that he was Cecil's son. While James was named by Cecil as a defendant in this action, Cecil has never alleged any separate wrongdoing by James. Cecil's claim against James appears to flow out of the same facts and circumstances as his claim against Bickett. Below, the parties have treated the claims as one and the same.

[7] By order entered September 15, 2020, the trial court dismissed the abuse of process claim with prejudice. Cecil has not included any arguments concerning the abuse of process claim as part of this appeal, and we deem any such arguments waived.

Prior to trial, Bickett moved the trial court for summary judgment on Cecil's sole remaining claim of wrongful use of civil proceedings. On August 13, 2021, after having considered the parties' extensive memoranda, the record from the 2012 suit, and the oral arguments of counsel, the trial court entered an order granting summary judgment to Bickett. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[8] 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute.

The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022). "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v.*

---

[8] Kentucky Rules of Civil Procedure.

*Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)).  Additionally, "[s]peculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018).  The standard of review for an appellate court is *de novo* because only legal issues are involved. *Isaacs v. Sentinel Ins. Co. Ltd.*, 607 S.W.3d 678, 681 (Ky. 2020).

## III. ANALYSIS

The purpose of the tort of wrongful use of civil proceedings "is to provide relief in cases in which a plaintiff brings a groundless suit *and* has an improper motive for bringing it." *Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 196 (Ky. 2020).  To prevail on a claim for wrongful use of civil proceedings, the plaintiff must prove:  (1) the defendant initiated or continued a civil suit against the plaintiff; (2) the defendant did so without probable cause; (3) the defendant acted with malice; (4) the action terminated in the favor of the

plaintiff; and (5) the plaintiff suffered damages as a result of the proceedings. *Id.* (citing *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016)). "[T]o ensure that litigants with valid claims will not be deterred from bringing their claims to court for fear of a subsequent lawsuit, the remedy is not favored, and its requirements are strictly construed against . . . [the] plaintiff." *Id.*; *see also Feinberg v. Townsend*, 107 S.W.3d 910, 911 (Ky. App. 2003) ("[T]here is a long-standing precedent that one claiming wrongful use of civil proceedings must strictly comply with the elements of the tort.").

In its order granting summary judgment in favor of Bickett, the trial court focused on malice, the third element.

> From [Cecil's] perspective, the most problematic element of his claim is the "malice" or "improper purpose" requirement. To survive summary disposition, and to ultimately prevail at trial, [Cecil] must produce evidence that Bickett was motivated by something other than a genuine belief that he was entitled to enforcement of the oral trust agreement, and that his efforts were aimed at something other than the recovery of the land that he previously transferred to [Cecil].

> The "malice" or "improper purpose" element of this type of claim is normally a question of fact for the jury. *See Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky 1989). However, in order for this issue to reach a jury, Cecil must "present[] at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S W2d at 482 (citing *Gullett v. McCormick*, Ky., 421 S.W.2d 352 (1967); *Continental Cas. Company v. Belknap Hardware & Manufacturing Co.*, Ky., 281 S.W.2d 914 (1955)). The only evidence

presented to the Court that would indicate an improper purpose or malice . . . are vague statements in [Cecil's] Responses to Defendant's Second Set of Interrogatories No. 10, which states as follows: "[W]hen Defendant Joseph Keith Bickett was released from prison, he exhibited animosity towards many individuals who were associated with his criminal prosecution, including [Cecil] and his wife. By instituting the Original Action, [Bickett] intended to exact retribution on [Cecil]." The Court finds that this vague and conclusory statement does not rise to the level of affirmative evidence sufficient to defeat a motion for summary judgment.

The greater weight, and, indeed, the only evidence in the record regarding this issue is that Bickett sought the recovery of the land that he transferred to the Cecils subject to an alleged oral agreement between the parties, which Bickett maintained was an enforceable oral trust under Kentucky law. There has been no evidence or testimony adduced to support the proposition that Bickett was motivated by anything other than these ends. Bickett was ultimately unsuccessful in these efforts, but [Cecil] has produced no evidence in the record to support a finding that he was motivated to "achieve a purpose other than the proper adjudication of the claim."

(Trial court's order entered Aug. 13, 2021, at *4-5.)

Like the trial court, we begin our review with the element of malice. "In the civil context, [malice] means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based[.]" *Seiller Waterman LLC*, 610 S.W.3d at 196 (citation omitted). The trial court focused on Cecil's failure to present any affirmative evidence to support his allegation that Bickett initiated the 2012 suit primarily because of feelings of

-10-

hostility or ill will against Cecil as this was the only improper purpose Cecil identified in his responses to Bickett's interrogatories.

In his motion for summary judgment, Bickett presented evidence tending to show that he was motivated by a desire to reclaim the property which he had deeded to Cecil based on the parties' alleged prior oral agreement. Bickett pointed to the fact that Cecil had deeded certain portions of the property to James prior to Bickett's release and additional portions to Bickett after he was released without requiring the payment of any consideration. Bickett also pointed to conversations he had with Cecil in which he asked Cecil to deed the rest of the property to him. In contrast, Cecil did not come forward with anything to support his vague and speculative allegation that he believed Bickett acted out of animosity or a desire to punish him based on Cecil's "involvement" in Bickett's past federal prosecution. In fact, other the posting of Bickett's $5,000.00 pretrial bond, which Bickett later used to pay a portion of his criminal fine, it is unclear what role, if any, Cecil or his wife played in Bickett's prosecution.

Cecil's arguments in this appeal, like those he made before the trial court, are based entirely on this Court's prior opinion in the 2012 suit. In effect, Cecil is trying to prove the element of malice through inference. He would have us infer malicious intent based on this Court's prior legal conclusions affirming summary judgment against Bickett. There are several problems with this line of

reasoning. First, we reviewed the prior claim as a matter of law. We did not make any factual determinations regarding Bickett's reasons for bringing the suit. We most certainly did not make a conclusive determination that Bickett never entered into an oral agreement with Cecil or that Bickett's primary purpose for bringing the 2012 suit was for something other than reclaiming title to the Properties based on the alleged oral agreement.[9]

Second, affirming summary judgment on a claim does not equate to a determination that the claim lacked probable cause at inception.[10] Even if it did, the prior summary judgment, without other evidence, would not help Cecil prove malice because "lack of probable cause and improper purpose are separate and distinct elements[.]" *Prewitt*, 777 S.W.2d at 894. "[W]ithout a proper independent allegation of an improper purpose, any improper purpose which may be inferred from a lack of probable cause is not sufficient" to support a claim for wrongful use

---

[9] Appellate courts do not make factual findings, especially in matters of fact disputed before a trial court. Any statements we made in the prior opinion, which could be construed as beyond the proper scope of our review, were mere dicta and not dispositive of any factual issues of dispute. *Stone v. City of Providence*, 236 Ky. 775, 34 S.W.2d 244, 245 (1930) ("But such language was dicta, as that question was not really involved, and the dicta is not now binding upon us in this subsequent case when the question is actually presented for decision.").

[10] For example, even though this Court relied on the merger doctrine to bar Bickett from asserting the existence of an oral trust agreement, case law existed at the time Bickett filed his suit arguably supporting such a theory. *Horn v. Horn*, 562 S.W.2d 319, 320 (Ky. App. 1978) ("[The Statute of Frauds] has no application when there is an express parol agreement establishing a trust because the section of the Statute of Frauds, which provides that all trust of land should be manifested in writing, has never been adopted in the Commonwealth of Kentucky."). Even though Bickett was not ultimately successful on the claim, the existence of such case law supports his thinking that probable legal cause existed for him to bring the claim.

of civil proceedings. *Seiller Waterman, LLC*, 610 S.W.3d at 200. In the same opinion, the Kentucky Supreme Court explained:

> [Appellant's] argument is apparently based on the premise that the same evidence which establishes lack of probable cause may support a reasonable inference that a party or his attorney acted for a primary purpose other than securing an adjudication of the party's claims when filing and pursuing the underlying action. This confluence of two separate elements of a [wrongful use of civil proceedings] claim is legally incorrect.

*Id*. at 199.

While malice is generally a jury question, the plaintiff must come forward with specific facts to demonstrate that the defendant acted with an improper purpose in bringing the prior civil action. *Id.* at 195. In the absence of such facts, the claim amounts to no more than "an inappropriate pleading of a legal conclusion[.]" *Id.* at 199. That is precisely what we have here. Despite having been warned by the trial court that additional proof beyond the 2012 suit and appeal would be necessary at the dispositive motion stage, Cecil failed to come forward with any such evidence in opposition to summary judgment. The only evidence of record suggests Bickett's focus and primary objective in bringing the 2012 suit was to see the land returned to him as he alleges Cecil promised to do when in made the transfer in 1988. While Cecil has pointed to evidence that Bickett's claim was ultimately determined to lack legal merit and barred by both legal and equitable defenses, he has failed to come forward with (or even allege)

-13-

*facts* which tend to show that Bickett acted with another motive, such as to punish Cecil. The trial court's decision that Cecil had failed to properly support his wrongful use of civil proceedings claim was the correct one, and summary judgment was properly granted.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Marion Circuit Court's order granting summary judgment.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEES: |
| --- | --- |
| Thomas E. Clay<br>Louisville, Kentucky | E. Gregory Goatley<br>Springfield, Kentucky |