John CARMICAL, Appellant

v.

Keith BULLOCK, Appellee.

No. 2006–CA–001595–MR.

Court of Appeals of Kentucky.

Aug. 10, 2007.

Discretionary Review Denied by Supreme Court May 14, 2008.

Daniel A. Simons, Richmond, KY, for appellant.

Gregg E. Thornton, Jonathan D. Weber, Gregg E. Thornton, Lexington, KY, for appellee.

Before COMBS, Chief Judge; NICKELL and WINE, Judges.

## OPINION

WINE, Judge.

John Carmical ("Carmical") appeals a jury verdict finding the Appellee, Keith Bullock ("Bullock"), not liable for damages he sustained as a result of an attack by Bullock's pet dog. The sole allegation of error concerns the trial court's instructions to the jury. Carmical asserts that the trial court should have only instructed the jury on a theory of strict liability. We do not agree and therefore affirm the judgment on the jury verdict for Bullock and awarding Carmical nothing on his claim.

On Monday, August 11, 2003, at approximately 1 p.m., Carmical, the route manager for Schwann Home Food Services ("Schwann"), was making deliveries in the neighborhood when he saw Bullock's vehicle in the driveway. Although Bullock was a regular customer of Schwann's, Carmical usually made deliveries to his home on Tuesdays at 5 p.m.

Bullock owned two Great Danes, Kayla, which was pregnant, and Jake, a male. Both animals were kept confined in the backyard. Bullock had moved Jake away from Kayla's pen and had him tethered to a staked 30–foot chain. Bullock testified the chain would have kept Jake approximately 20 feet from the driveway near the house.

Carmical first went to the front door of the Bullock home. When there was no response, he went to the rear of the house where he observed Bullock using a wee-deater. Carmical waved his arms to get Bullock's attention. Unfortunately, Jake saw Carmical first and immediately charged. Carmical attempted to back away. Even though chained, Jake was able to overtake Carmical. Jake jumped on Carmical, knocked him to the ground and began to bite him repeatedly. Bullock

heard Carmical scream as he was being mauled and immediately responded. Regrettably, Carmical suffered serious injuries, including multiple wounds to his right forearm, left and right hands, rib cage and shoulder. Throughout the attack, Jake remained tethered to the staked chain.

Carmical filed suit in the Madison Circuit Court alleging Bullock was strictly liable for his damages pursuant to KRS 258.275(1). At the close of all the proof, the court instructed the jury as follows:

The Defendant, Keith Bullock, is liable for damages caused by his dog to the Plaintiff, John Carmical, if he had reason to believe that John Carmical would be in the vicinity of the animal. He further had a duty to exercise ordinary care to control his dog for the safety of others.

You will find for the Plaintiff, John Carmical, under this Instruction if you are satisfied from the evidence that:

(A) The Defendant, Keith Bullock, had reason to believe that the Plaintiff would be in the vicinity of his dog; OR

(B) The Defendant, Keith Bullock, failed to exercise ordinary care to control his dog for the safety of others, and that such failure was a substantial factor in causing the Plaintiff's injuries.

Otherwise, you will find for Keith Bullock.

The jury found for Bullock under paragraph (B) of the instruction.

Carmical objected to this instruction, arguing that under KRS 258.275(1) and pursuant to the model instructions contained in 2 John S. Palmore, *Kentucky Instructions to Juries*, Civil, § 15.01 (2005), Bull-

ock was liable for his injuries and only an instruction grounded in strict liability should have been given to the jury.

KRS 258.275(1)[1] enacted in 1954 states:

Any owner or keeper of a dog which has killed or injured livestock or poultry or which has bitten such livestock or poultry so severely as to necessitate its destruction, or injured or damaged any person or property, shall be liable to the owner of such livestock or poultry, or person in a civil action for all damages and costs, or to the Commonwealth.

■ "Strict liability" is a judicial doctrine which relieves a plaintiff from proving specific acts of negligence and protects him from certain defenses. However, contrary to Carmical's position, Kentucky courts have previously held that KRS 258.275(1) does not impose strict liability upon the owner or keeper of a dog.

The historical incidence of our dog-bite statutes was briefly sketched in *Dykes v. Alexander*, Ky., 411 S.W.2d 47 (1967), which expressed the opinion that the legislature did not intend to impose strict liability under any and all circumstances. That case stands for the proposition that one who keeps a dog enclosed or fettered on his own premises will not be liable to an interloper whose presence and exposure to the dog he has no reason to anticipate. Conversely, however, if the person is one whose proximity to the animal he has reason to anticipate, we think the statute abrogates the necessity of proving the ancient hallmark of liability, which was that the owner or keeper had knowledge of its vicious propensities. If the statute did not do that much there would seem to have been very little or no reason for its enactment.

---

1. KRS 258.275 was repealed in July 2004, prior to the filing of this suit. However, the replacement statute, KRS 258.235(4), reads substantially the same: "Any owner whose dog is found to have caused damage to a person, livestock, or other property shall be responsible for that damage."

*Johnson v. Brown,* 450 S.W.2d 495, 496 (Ky.1970).

While the bite victim in *Dykes v. Alexander, supra,* was a small child who trespassed upon the land where the dog was kept, the circumstances are remarkably similar especially as there was no proof that the dog had previously attacked anyone, that it was in an enclosed area, and that the owner was unaware of the presence of the bite victim.

 Even if KRS 258.275(1) created a strict liability action, negligence principles are still applicable, as the dog owner's liability should be subject to the doctrine of comparative negligence. Under a strict liability theory, the owners of an animal may exculpate themselves from liability by showing that the harm was caused by the victim's fault, or by the fault of a third person for whom the owner was not responsible, or by a fortuitous circumstance. The instructions in § 15.01 of 2 John S. Palmore, *Kentucky Instructions to Juries, Civil,* clearly anticipate circumstances where a comparative negligence instruction may be appropriate.

In other states, comparative fault is applied to a strict liability statute dealing with dog bites. *S.H. by and through Robinson v. Bistryski,* 923 P.2d 1376 (Utah 1996); *Carr v. Case,* 135 Vt. 524, 380 A.2d 91 (1977); *Howard v. Allstate Insurance Co.,* 520 So.2d 715 (La.1988).

The Wisconsin dog bite statute, W.S.A. 174.02, is comparable to our own:

**174.02. Owner's liability for damage caused by dog; penalties; court order to kill a dog**

(1) **Liability for injury.** (a) *Without notice.* Subject to § 895.045 and except as provided in § 895.57(4), the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.

(b) *After notice.* Subject to § 895.045 and except as provided in § 895.57(4), the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.

The Wisconsin Supreme Court interpreted that statute under unfortunate circumstances similar to those in the Madison Circuit Court. On December 23, 2000, Michelle Rausch and her three-year-old daughter, Mackenzie, drove to the home of Nicole Beliunas to deliver Christmas cookies. Michelle and Nicole had been best friends for a number of years and frequently visited each other. On the day in question, the Beliunases did not invite Michelle over and Michelle had not called ahead to determine if the Beliunases were home. Upon reaching the Beliunases' home, Michelle knocked on the back door, opened it, stepped inside, and called out. No one answered. Apparently, the Beliunases were at a movie and had left their door unlocked. Michelle proceeded to place the cookies on the kitchen table, which was a short distance from the door. She then put Mackenzie on a chair. While Michelle was writing a note to Nicole, Mackenzie, unbeknownst to Michelle, left the chair and proceeded into the Beliunases' living room. Michelle subsequently heard Mackenzie scream and turned to see Mackenzie bleeding from the mouth and standing near the Beliunases' dog, Molly.

The Wisconsin court held that, while the state's dog bite statute creates a strict liability action, negligence principles are still applicable as the dog owner's liability is expressly subject to the doctrine of comparative negligence. *Fandrey ex rel. Connell v. American Family Mutual Insur-*

*ance Co.*, 272 Wis.2d 46, 680 N.W.2d 345, 355 (2004).

■ "Alleged errors regarding jury instructions are considered questions of law that we examine under a *de novo* standard of review." *Hamilton v. CSX Transportation, Inc.*, 208 S.W.3d 272, 275 (Ky.App.2006)(citing *Reece v. Dixie Warehouse and Cartage Co.*, 188 S.W.3d 440, 449 (Ky.App.2006)). When examining jury instructions for error, they must be read as a whole. *Bills v. Commonwealth*, 851 S.W.2d 466, 471 (Ky.1993).

■ Because the court instructed the jury consistent with the holdings of *Johnson v. Brown* and *Dykes v. Alexander, supra*, we find no error in the trial court's instructions on Bullock's owed duties.

The jury verdict and judgment of the Madison Circuit Court are affirmed.

ALL CONCUR.