John David MAY and Sherri May, Appellants,

v.

Sarah HOLZKNECHT, Mother and Next Friend of Meghan Holzknecht; and Kentucky Farm Bureau Mutual Insurance Company, Appellees.

No. 2009–CA–001905–MR.

Court of Appeals of Kentucky.

Aug. 13, 2010.

Patrick A. Ross, Horse Cave, KY, for appellants.

Matthew C. Hess, Elizabethtown, KY, for appellee Sarah Holzknecht.

Before TAYLOR, Chief Judge; COMBS and NICKELL, Judges.

## OPINION

COMBS, Judge.

Sherri May and John David May appeal from a partial summary judgment and a subsequent trial order and judgment of the Hardin Circuit Court in favor of Sarah Holzknecht, as mother and next friend of Meghan Holzknecht. The Mays contend that the trial court erred by concluding that they were strictly liable under the provisions of Kentucky Revised Statutes[s](KRS) 258.235(4), the dog-bite statute, by failing to direct a verdict in favor of John David May at trial, and by permitting the jury to award damages for future pain and suffering. After our review, we affirm.

On January 23, 2008, Sarah Holzknecht filed a complaint against the Mays and their homeowners' insurance carrier, Kentucky Farm Bureau Mutual Insurance Company.[1] Holzknecht alleged that the Mays were liable for their daughter's injuries when a dog kept at their home-based childcare center mauled her. Holzknecht asserted that the Mays failed to exercise ordinary care for the safety of her child. Additionally, she argued that they were liable under the provisions of KRS 258.235(4), which provides that the keeper of a dog shall be responsible for the damage that it causes. Holzknecht alleged that since Meghan was under two years of age at the time of the attack, she was incapable of comparative negligence as a matter of law.

The Mays answered and denied that they were liable for Meghan's injuries. In an answer to an interrogatory, the Mays suggested that the dog "could well have been excessively provoked" by Meghan. However, they also described another incident that had occurred just days before the event involving Meghan when their dog nipped and scratched another child who was being cared for in their home. In her deposition, Sherri May admitted that the dog growled at men from time to time.

---

1. Farm Bureau defended the action under a reservation of rights. The insurer was dismissed by an order of the trial court entered September 29, 2008. We have addressed the merits of that decision in an opinion also rendered this date.

With respect to the events of the day of Meghan's attack, Sherri May admitted that she had allowed the dog to be in the area among the children at a time when she was preparing the children for a mid-morning rest period. The dog was sharing a blanket with Meghan when she (Sherri May) left the room to make a sandwich in the kitchen. Shortly after leaving for the kitchen, Sherri May heard an unusual growling followed by screaming. One of the children ran into the kitchen to report that the dog had attacked Meghan.

After the Mays were deposed, Holzknecht filed a motion for summary judgment with respect to their liability. She contended that the Mays were liable as a matter of law. While she conceded that the dog-bite statute had not been construed to impose strict liability on the keeper of a dog, Holzknecht argued that the statute did relieve her of any obligation to show the vicious propensities of the Mays' dog. Since Meghan was incapable of negligence as a matter of law due to her extreme minority, Holzknecht argued that only the Mays could be held liable for the injuries resulting from the dog attack.

In their response, the Mays conceded that Holzknecht did not have the burden of proving the dog's vicious propensities. Nonetheless, relying upon this court's opinion in *Carmical v. Bullock,* 251 S.W.3d 324, 327 (Ky.App.2007), they argued that:

the owners of an animal may exculpate themselves from liability by showing that the harm was caused by the victim's fault, or by the fault of a third person for whom the owner was not responsible, or by a fortuitous circumstance.

In this case, the Mays contended that they could be relieved of responsibility for the damage caused by the dog since the facts "suggest that Meghan pulled on the dog's blanket before the dog bit her" (Defendants' Response to Plaintiff's Motion for Summary Judgment at 2). Although they had represented that the dog was kept outside, the Mays nonetheless attempted to avoid responsibility by arguing that the mother had not seemed concerned that the dog had access to Meghan when she stayed with the Mays.

The trial court concluded that the child could not be found negligent since she was less than two years of age and that no third-party could be held responsible for the damages caused by the dog under the facts of this case. The court also categorically rejected the notion that the facts of this case amounted to a "fortuitous circumstance" that might absolve the Mays of liability. Thus, a partial summary judgment was entered in Holzknecht's favor.

With liability established, a jury was seated to determine damages. The jury awarded Holzknecht $25,889.84 for Meghan's medical expenses and $50,000.00 for her past and future pain and suffering. The trial court denied the Mays' motion to alter, amend, or vacate the judgment. This appeal followed.

On appeal, the Mays present three issues for our review. First, they contend that the trial court erred by concluding that the provisions of KRS 258.235(4) created strict liability for the keepers of a dog and, consequently, by granting summary judgment with respect to their liability. Instead, they argue that liability should have been established according to traditional principles of negligence.

Next, the Mays contend that the trial court erred by failing to direct a verdict in favor of John David May. They argue that he was not at fault and could not be held liable for the damages resulting from the dog's attack.

Finally, the Mays argue that the trial court erred by permitting the jury to make an award for Meghan's future pain and

suffering since there was no evidence to establish with reasonable certainty that she would experience any such ill effects. These issues are discussed in the order in which they were argued in the parties' briefs.

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule[s] of Civil Procedure 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id., citing Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985).

On appeal, we consider whether the trial court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App.1996). Since summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court need not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky.1992). Our review is *de novo*.

■ KRS 258.235(4) provides that any dog owner (and every person who keeps or harbors the dog) "whose dog is found to have caused damage to a person . . . shall be responsible for that damage."[2] The trial court did not interpret the provisions of KRS 258.235 to impose strict liability upon the keepers of dogs under all circumstances. In fact, the court specifically rejected this notion. However, from the undisputed facts of *this case*, the trial court concluded that the Mays, *and the Mays alone*, were liable for the damages caused by the dog that they kept. Again, neither Meghan, the victim, nor any intervening third party was at fault to arguably exculpate the Mays. *Carmical*, 251 S.W.3d at 327.

At common law, "the dog was regarded as a tame, harmless, and docile animal, and its owner not responsible for any vicious or mischievous act it might do, unless he had a previous knowledge of the mischievous or vicious propensities." *Koestel v. Cunningham*, 97 Ky. 421, 30 S.W. 970, 17 Ky.L.Rptr. 296 (1895). "As an English judge put it, 'the dog was entitled to his first bite.'" *Id.* However, once it was established that the dog was vicious or mischievous and that its keeper had knowledge of that fact, proof of negligence on the part of the keeper became unnecessary in an action for damages. *Brown v. Weathers*, 247 Ky. 306, 57 S.W.2d 4 (1933).

In abrogating the common law, our dog-bite statutes were intended to broaden the responsibilities of those who keep a dog. *Koestel, supra*. Nevertheless, in construing various (yet similar) versions of the dog-bite statute over time, our courts have held that the General Assembly "did not intend to impose strict liability under any and all circumstances." *Johnson v. Brown*, 450 S.W.2d 495, 496 (Ky.1970). In *Bush v. Wathen*, 104 Ky. 548, 47 S.W. 599, 600, 20 Ky.L.Rptr. 731 (1898), the Court

---

**2.** KRS 258.990(2), entitled "Penalties," provides that "[t]he owner of any dog . . . which bites a human being shall be liable to pay all damages for personal injuries resulting from the bite. . . ."

acknowledged that the keeper of a dog "shall be liable to the party injured for all damages done by such dog[,]" but it also held that "if the party injured was guilty of some act except for which the dog would not have bitten him, he is guilty of contributory negligence, and cannot recover damages for the injury sustained."

In *Dykes v. Alexander*, 411 S.W.2d 47 (Ky.1967), the Court held that one who keeps a dog enclosed or fettered on his own premises will not be liable to a trespasser whose presence and exposure to the dog was unknown to the dog's keeper. In *Johnson v. Brown, supra,* on the other hand, we held that if the plaintiff's presence was known to the dog's keeper (or within his reasonable expectation), it was the keeper's statutory duty to prevent the plaintiff from being bitten—while the plaintiff was *also* expected to exercise ordinary care for his own safety. Recently, we have recognized that principles of comparative fault remain relevant where a dog's keeper can show that the harm was caused by the victim, by the fault of a third person for whom the owner was not responsible, or by a fortuitous circumstance. *See Carmical v. Bullock,* 251 S.W.3d 324 (Ky. App.2007).

None of the factors that might have absolved or limited the Mays' liability is involved in this case. There is no dispute that the Mays harbored the dog and that they knew or reasonably expected that the dog would have direct access to the children in their home, including Meghan Holzknecht. They had told Meghan's mother that the dog would be kept outside—contrary to actual practice. Under the circumstances, they violated their statutory duty to prevent the child from being mauled by the dog. Evidence of the dog's temperament is irrelevant, and the child was not comparatively negligent; again, she was legally incapable of negligence in

light of her tender years. *See Lehman v. Patterson,* 298 Ky. 360, 182 S.W.2d 897 (1944) (a child under seven years of age is not chargeable with contributory negligence). No third party and no fortuitous circumstance existed to implicate any aspect of comparative negligence.

This case involves application of the statute to undisputed facts. Under these facts, the Mays were liable as the dog's keepers for Meghan's injuries as a matter of law, and the only question that remained was the extent of her damages. *See Davidson v. Manning,* 168 Ky. 288, 181 S.W. 1111 (1916) (where child was present, was invited in, and the dog bit her, the only question was as to the extent of her injury). The trial court clearly did not err by granting the motion for summary judgment with respect to the Mays' liability.

■ Next, the Mays contend that John David May was entitled to a directed verdict since he did not operate the child care business, made no decisions with respect to Sherri's care of the children, and was not even at home when the dog attacked Meghan. We disagree.

The Mays' argument wholly disregards the existence of KRS 258.235(4). As we have concluded, *under the circumstances of this case,* the Mays were liable as the dog's keepers for Meghan's injuries as a matter of law. Since the trial court granted Holzknecht's motion for partial summary judgment, no evidence to prove John David's negligence was introduced at trial, and none was necessary. John David's liability does not arise from his activities at the home on the day that Meghan was mauled. Instead, under the undisputed facts of this case, he is liable by virtue of his status as keeper of the dog. John David fed, watered, and otherwise cared for the dog. As an owner of the home, he could have assured that the dog be kept

outside or even removed from the premises. He knew or reasonably expected that the dog would likely have direct access to the children kept at his house, including Meghan. John David violated his statutory duty to prevent the child from being mauled by the dog, and he cannot claim the relief he seeks.

■ Finally, the Mays contend that the trial court erred by permitting the jury to make an award for Meghan's future pain and suffering since Holzknecht did not establish that Meghan would need any additional medical treatment. The Mays contend that the trial court erred by failing to grant their motion for a new trial on this basis.

In support of their argument, the Mays cite this court's opinion in *Worldwide Equipment, Inc. v. Mullins,* 11 S.W.3d 50 (Ky.App.1999). In *Worldwide Equipment,* we held that where there was no evidence to suggest that the plaintiff had survived the immediate impact of a collision with a coal truck, the trial court erred by failing to grant a directed verdict on the issue of pain and suffering. That holding is highly distinguishable and does not serve as an apt precedent in this case.

■ Future pain and suffering because of an injury is an element of damages for which the injured party is entitled to recover—if there is evidence establishing that it is reasonably certain that pain and suffering will occur. *American States Ins. Co. v. Audubon Country Club,* 650 S.W.2d 252 (Ky.1983). If future medical expenses are awarded by a jury, there is a strong indication that a corresponding award for future pain and suffering must be considered. *Id.* However, there is no rule to suggest that where no future medical expenses are indicated, the jury is precluded from making an award. The test is whether there is evidence to indicate that the plaintiff's pain and suffering are *likely* to continue to occur.

■ Whether an award represents excessive or inadequate damages turns on the nature of the underlying evidence. *Miller v. Swift,* 42 S.W.3d 599 (Ky.2001). In this case, there was evidence to indicate that the child had suffered severe lacerations and puncture wounds to her face and the inside of her mouth; that she had been airlifted to Louisville for treatment; that she had undergone two surgeries (the second conducted nearly a year following the first to allow for some initial healing); that she had contracted an unrelated virus at the hospital; that she had cried with pain as her face healed; that she continued to have trouble sleeping nearly two years later; that she remained afraid of any loud noise that reminded her of the helicopter that transported her to the hospital; that she still clung compulsively to her mother; and that her face was scarred by the attack. In light of this considerable quantum of evidence, we cannot say that the trial court erred by denying the Mays' motion for a new trial based on an allegation of an excessive award of damages.

The judgments of the Hardin Circuit Court are affirmed.

ALL CONCUR.