RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0173-MR

ERIC JENKINS; ATLAS
EXCAVATING, LLC A/K/A ATLAS
EXCAVATING/ATLAS TRUCKING;
CLINT RUSSELL; AND AMANDA
RUSSELL                                                           APPELLANTS


|                       | APPEAL FROM ANDERSON CIRCUIT COURT |
|-----------------------|-----------------------|
| v.                    | HONORABLE CHARLES R. HICKMAN, JUDGE |
|                       | ACTION NO. 12-CI-00395 |


THE ESTATE OF MARIE GARMON,
BY DAVID GARMON,
ADMINISTRATOR; DAVID
GARMON, INDIVIDUALLY; DAVID
GARMON AS PARENT AND
GUARDIAN OF JOHN PAUL
GARMON; DAVID GARMON AS
PARENT AND GUARDIAN OF
MARLIE FORBES GARMON; JOHN
PAUL GARMON, INDIVIDUALLY;
KENTUCKY EMPLOYERS SAFETY
ASSOCIATION, INC.; AND MARLIE
FORBES GARMON, INDIVIDUALLY                                        APPELLEES


AND

THE ESTATE OF MARIE GARMON
BY DAVID GARMON,
ADMINISTRATOR; DAVID
GARMON, INDIVIDUALLY; DAVID
GARMON AS PARENT AND
GUARDIAN OF JOHN PAUL
GARMON; AND DAVID GARMON
AS PARENT AND GUARDIAN OF
MARLIE FORBES GARMON                                    APPELLANTS


                        APPEAL FROM ANDERSON CIRCUIT COURT
v.                      HONORABLE CHARLES R. HICKMAN, JUDGE
                                ACTION NO. 12-CI-00395


MAGO CONSTRUCTION COMPANY,
LLC; ATLAS EXCAVATING/ATLAS
TRUCKING; ERIC JENKINS;
AMANDA BRADSHAW, NOW
KNOWN AS AMANDA RUSSELL;
CLINT RUSSELL; NATIONAL
INDEMNITY COMPANY OMAHA;
AND KENTUCKY EMPLOYERS
SAFETY ASSOCIATION, INC.                                  APPELLEES


                                OPINION
                               AFFIRMING

                            ** ** ** ** **

BEFORE:  EASTON, JONES, AND LAMBERT, JUDGES.

JONES, JUDGE:  These appeals arise out of a motor vehicle accident that occurred between the decedent, Marie Garmon, and Eric Jenkins, a dump truck driver who was hauling asphalt for Atlas Excavating, LLC ("Atlas"), a defunct Kentucky limited liability company, owned by Clint and Amanda Russell ("the Russells"), pursuant to an agreement Atlas had with Mago Construction Company ("Mago") to haul asphalt between Mago's asphalt plant and Mago's jobsite at Bluegrass Parkway.

The Garmons filed a wrongful death suit against Jenkins, Atlas, the Russells, and Mago.[1]  The trial court granted summary judgment to Mago on the basis that Atlas was an independent contractor and Mago was neither vicariously liable for the actions of Atlas and Jenkins at the time of the accident, nor could the Garmons prevail against Mago for its alleged independent negligence.  Thereafter, in late September 2019, the Garmons' claims against Jenkins, Atlas, and the Russells were tried before a jury.  Ultimately, the jury determined that Jenkins and Atlas/the Russells were each fifty percent at fault for Marie's death.  The jury awarded $32,144,971.88 in damages to the Garmons, which included a five-million-dollar award for Marie's pain and suffering before her death, five million

---

[1]  Because Atlas had been administratively dissolved as a company, the trial court allowed the Garmons to proceed against Atlas's owners, Clint and Amanda Russell.  The Russells have not challenged their inclusion on this basis.

-3-

dollars each to Marie's husband and her two children for loss of consortium, and ten million dollars in punitive damages.

Atlas and the Russells now appeal the judgment, arguing the trial court should have granted them a new trial based on a multitude of alleged errors, in Appeal No. 2020-CA-0173-MR.[2]  The Garmons appeal the trial court's order granting Mago summary judgment in Appeal No. 2020-CA-0174-MR.  This Court consolidated the appeals to be heard by the same panel.  Now, having reviewed the record and being otherwise sufficiently advised, we affirm the judgments before us in these two appeals.

## I. BACKGROUND

Around 4:00 p.m., on the afternoon of September 7, 2012, Jenkins was driving an empty Atlas dump truck eastbound on Highway 62, a two-lane road, in Anderson County, Kentucky; his intended destination was Mago's Tyrone asphalt plant in Lawrenceburg.  Around the same time, Marie, a forty-three-year-old hospice nurse, was driving her minivan in the opposite direction on Highway 62; she was on her way home after having visited one of her patients.

---

[2]  Jenkins did not appeal, and he has not filed any briefs before this Court.

Shortly before Marie and Jenkins crossed paths, the car immediately in front of Jenkins put on its turn signal and slowed to make a left-hand turn.[3] Jenkins applied his brakes but, seeing that he was not going to be able to stop in time, swerved to the left to avoid crashing into the car. The dump truck skidded across the center line towards Marie's minivan. Marie was not able to get out of the way in time, and Jenkins's dump truck crashed into Marie's minivan. Both vehicles came to rest on the westbound shoulder of Highway 62, with Marie's minivan pinned under Jenkins's dump truck.

Marie was conscious, alert, and talking while first responders worked to extract her from the wreckage. Due to the nature of her work as a nurse, Marie was aware of the severity of her injuries and the very real possibility that she was going to die from them. She expressed concern about leaving her children motherless. Once she was freed, Marie was loaded onto a helicopter and transported to the University of Kentucky's hospital in Lexington. First responders testified that Marie remained conscious throughout the extraction and helicopter ride and that she reported being in excruciating physical pain. Marie died from her injuries five days after the accident.

---

[3] Jenkins's version of events has changed over time; he first denied that the car in front of him used its turn signal. By the time of this trial, however, Jenkins admitted to seeing the car's turn signal shortly before the wreck.

Jenkins was also attended to by first responders at the scene of the accident. None of the first responders who attended to Jenkins suspected him of being impaired or intoxicated. However, blood tests taken at the hospital at approximately 7:30 p.m. the evening of the accident revealed the presence of drugs in Jenkins's system, specifically, "diazepam 294 ng/mL, 11-Nor-caboxy THC, Delta 9 THC 2 ng/ML, [and] nordiazepam 450 ng/mL." Jenkins subsequently admitted smoking marijuana less than twenty-four hours prior to the accident and taking the prescription drugs Valium and Lortab on the day of the accident.

Ultimately, the Garmons filed a wrongful death suit against Atlas, the Russells, Jenkins, and Mago. Prior to trial, the lower court granted Mago summary judgment, leaving only the Garmons' claims against Atlas, the Russells, and Jenkins. Following extensive motion practice, a flurry of motions *in limine*, and two mistrials, a jury trial began on September 30, 2019, and was completed on October 3, 2019. The Anderson County jury returned a verdict in favor of the Garmons, apportioning fifty percent of the fault to Jenkins and fifty percent to Atlas/the Russells. The jury awarded the Garmons a total of $32,144,971.88 in compensatory and punitive damages, broken down as follows: (1) medical expenses, $315,278.63; (2) Marie's loss of future income, $1,802,110; (3) Marie's pain and suffering, $5,000,000; (4) David's loss of spousal consortium claim, $5,000,000; (6) John's loss of parental consortium claim, $5,000,000; (7) Marlie's

loss of parental consortium claim, $5,000,000; (7) property damage, $13,881; (8) funeral expenses, $13,702.25; and (9) punitive damages, $10,000,000.

Following an unsuccessful motion for a new trial, Atlas and the Russells appealed the judgment against them, and the Garmons appealed the trial court's summary judgment orders in favor of Mago.

## II. APPEAL NO. 2020-CA-0173-MR

Atlas and the Russells (referred to collectively as "the Atlas Appellants" in this section of the Opinion) raise a plethora of issues they contend warrant vacating the judgment against them and remanding for a new trial. Their many assignments of error are best categorized as: (1) admission of evidence related to Jenkins's use of controlled substances and impairment, which they claim were unduly prejudicial and overly speculative; (2) improper and inflammatory statements made by the Garmons' trial counsel during closing arguments, which they maintain incited the jury's prejudice and caused the jury to award excessive damages; (3) errors in the jury instructions; and (4) the improper admission of evidence related to the Atlas Appellants' failure to abide by state and federal regulations and to properly maintain the dump truck at issue. We address the claimed errors below.

## A. *Admission of Impairment-Related Evidence*

"[A]buse of discretion is the proper standard of review of a trial court's evidentiary rulings." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "Rulings upon admissibility of evidence are within the discretion of the trial judge," and we will not reverse absent a "clear abuse of discretion." *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky. 1994).

Jenkins admitted that he was using controlled substances, including both prescription and illegal drugs, when he was hired by Atlas. Jenkins further admitted smoking marijuana less than twenty hours before the accident and taking both Lortab and Valium on the morning of the accident. After the accident, he was criminally charged and pleaded guilty to manslaughter in the second degree[4] and operating a commercial vehicle under the influence of alcohol or other controlled substances.[5] At trial, the Garmons were permitted to introduce evidence and testimony of Jenkins's drug use prior to the accident, including the hospital

---

[4] Kentucky Revised Statutes ("KRS") 507.040.

[5] KRS 281A.210.

toxicology reports, Jenkins's guilty plea, and expert testimony concerning the effect his drug usage may have had on the accident.

The Atlas Appellants argue that the trial court erred when it allowed the Garmons to introduce such evidence at trial for the purpose of insinuating that Jenkins was "intoxicated and otherwise impaired" prior to the accident. The Atlas Appellants point out that none of the many first responders who interacted with Jenkins at the scene of the accident believed him to be intoxicated or impaired. According to the Atlas Appellants, even the Garmons' own pre-trial expert, Dr. George Nichols, admitted that the toxicology reports, standing alone, were insufficient to establish whether Jenkins was legally impaired at the time of the accident.[6]

The Atlas Appellants rely heavily on *Burton v. Commonwealth*, 300 S.W.3d 126 (Ky. 2009), to support their contention that "impairment" evidence

---

[6] The Garmons initially identified Dr. Greg Davis as their expert to opine on whether Jenkins was impaired at the time of this accident. Dr. Davis had assisted prosecutors in the criminal case against Jenkins, and he was allegedly prepared to testify that Jenkins was impaired by his use of THC and Valium when the accident occurred. Prior to trial, the Garmons filed a supplemental pre-trial disclosure which withdrew Dr. Davis as a testifying expert and indicated that the Garmons planned to call Dr. George Nichols, who had relied, in part, on Dr. Davis's report, to testify on their behalf. During pre-trial discovery, Dr. Nichols testified, contrary to Dr. Davis's report, that assessing impairment could not be determined based only on the toxicology reports because substances affect each person differently and without having direct observation of obvious signs of impairment it was not possible to definitively say whether Jenkins was impaired at the time of the accident. However, at trial, the Garmons also called Kentucky State Trooper Hunter Martin, a law enforcement accident reconstructionist employed by the State Police. Trooper Martin testified that in his opinion, Jenkins was impaired at the time of the accident. The Atlas Appellants have raised a separate assignment of error related to the admission of Trooper Martin's testimony.

should not have been presented to the jury. Burton was convicted of second-degree manslaughter, second-degree assault, and operating a motor vehicle with a suspended license. Burton's convictions stemmed from an automobile collision that occurred on a rural two-lane road. The driver of the car Burton hit was killed in the collision. Although Burton acted somewhat strangely at the scene and gave inconsistent accounts of how the accident occurred, one of the investigating officers wrote in his report that Burton did not appear to be under the influence. After the Kentucky State Police later determined that Burton caused the accident by crossing the center line, he was charged with various criminal offenses. During his criminal trial, Burton sought to exclude hospital urinalysis reports revealing the presence of THC and cocaine in his system on the basis that the reports did not establish that he was impaired at the time of the accident. Burton pointed out that the tests, standing alone, were incapable of showing in what quantities or when the substances had been ingested. In concluding that the evidence should have not been permitted, the Kentucky Supreme Court focused heavily on the fact that the drugs at issue could have been ingested up to several days before the accident. The Court held that "[a]bsent a proper context within the other evidence, the introduction of urinalysis results only encouraged speculation." *Id.* at 138.

There are numerous differences between this case and *Burton*, which render it largely inapposite. First, the tests in *Burton* were urine tests, which the

Court took pains to point out were considerably less specific than blood tests, the type of tests at issue here. Second, the "proper temporal context" in this case was supplied by Jenkins himself who testified without objection that he smoked marijuana close in time to the wreck and took prescription Valium and Lortab on the day of the wreck. The blood tests merely confirmed what Jenkins himself had already admitted. Finally, *Burton* was a criminal case in which the Commonwealth had to prove beyond a reasonable doubt that the defendant violated specific criminal statutes. This was a negligence case requiring the jury to determine by a preponderance of the evidence whether the Atlas Appellants and/or Jenkins breached their duties of care and whether any such breaches were the proximate cause of Marie's death.

"[I]n the modern world of litigation, most aspects of human conduct and interaction are governed by statutes and regulations that prescribe specific duties." *Henson v. Klein*, 319 S.W.3d 413, 421 (Ky. 2010). Notably, Jenkins had a duty to obey all traffic laws, including traffic laws prohibiting commercial operators from driving while taking any controlled substances. KRS 281A.210 ("[A] person shall not drive a commercial motor vehicle within this state while having any measurable or detectable amount of alcohol or other controlled substances in his system."). In turn, Atlas and the Russells had a duty to properly

screen and vet their employees to make sure they did not pose an unreasonable risk to other drivers due to their ongoing use of controlled substances.

It is in the context of breach and causation that evidence of Jenkins' drug use on the day of the accident is relevant. Contrary to the Atlas Appellants' arguments, the Garmons did not have to establish a certain level of criminal impairment or actual intoxication, rather, they had to establish that the Atlas Appellants' breaches of care were the proximate cause of the accident. Jenkins's admission that he took the drugs at issue just hours before the accident, provided the necessary temporal proximity to allow introduction of the hospital reports and other evidence of drug use alleged by the Garmons. In turn, those reports in combination with Jenkins's testimony and other evidence allowed the various experts to offer an opinion as to whether Jenkins's use of controlled substances while driving his commercial dump truck was a substantial factor in causing Marie's death.

Again, we reiterate that this was a civil action based on the alleged negligence of the Atlas Appellants and Jenkins; it was not a criminal case where the Commonwealth had to prove beyond a reasonable doubt that Jenkins was legally intoxicated. Rather, in this civil negligence action one of the issues was whether Jenkins was operating a commercial vehicle with measurable amounts of controlled substances in his system and whether his doing so was a substantial

factor in causing Marie's death.[7]  The toxicology reports and related evidence were relevant to the issue, and not unduly prejudicial.

The Atlas Appellants also complain that the trial court erred by allowing the Garmons to introduce Jenkins's guilty plea and indictment.  The charges to which Jenkins pleaded guilty flowed out of the accident at issue.  "On the theory that it is an admission against interest, a plea of guilty to a criminal charge is competent evidence in a civil case involving the same occurrence, but it is not conclusive and may be explained." *Johnson v. Tucker*, 383 S.W.2d 325, 326 (Ky. 1964).  The Atlas Appellants had the opportunity to examine Jenkins concerning his plea, and the trial court admonished the jury multiple times that the guilty plea was not binding on them.  While the Atlas Appellants may not like that Jenkins's guilty plea placed them in a worse position at trial, the fact is that the Atlas Appellants were not unduly prejudiced by the admission of the plea.  And even without the plea, the Atlas Appellants would have still been faced with Jenkins's factual admissions that he took controlled substances on the morning of the accident.

---

[7]  "[T]he legislature enacted Chapter 281A in order to apply more stringent controls to the operators of commercial vehicles in light of the heightened likelihood of danger inherent in the improper operation of their vehicles." *Beatus v. Commonwealth*, 965 S.W.2d 167, 169 (Ky. App. 1998).  "[D]rivers of huge commercial vehicles bear a heavier burden as to sobriety – an objective commensurate with the potentially greater havoc they would wreak on the public if driving under the influence." *Id.*

Lastly, the Atlas Appellants assert that the trial court erred when it allowed Kentucky State Trooper Hunter Martin, an accident reconstructionist, to testify concerning the contribution of toxicology to the motor vehicle accident. In sum, Trooper Martin testified that in his opinion based on his review of all the relevant evidence, Jenkins's drug usage contributed to this accident. Most notably, in reaching his opinion, Trooper Martin relied on an opinion by Dr. Gregory Davis. The Atlas Appellants claim the theories espoused by Dr. Davis were debunked by the Garmons' testifying expert, Dr. Nichols, who stated that in his opinion impairment can only be based on personal or electronic observation.

Trooper Martin's specific testimony was not objected to at trial. Rather, prior to trial, Mago filed a motion *in limine* to exclude Dr. Davis's opinions; however, the Atlas Appellants themselves did not object to Trooper Martin's testimony at trial. In fact, the Atlas Appellants questioned Trooper Martin on his opinions and chose to affirmatively admit Dr. Davis's report as an exhibit. Instead of objecting to this line of questioning, the Atlas Appellants chose to pursue it. Having done so, they have no cause to complain.

Additionally, as an accident reconstructionist, Trooper Martin was qualified to give an opinion regarding the cause of the accident. While Trooper Martin relied, in part, on Dr. Davis's report, he also considered Jenkins's admissions regarding his drug use hours before the accident, the toxicology

-14-

reports, and the facts surrounding the accident to formulate his conclusion that Jenkins's use of controlled substances contributed to the accident. Trooper Martin was qualified to give such an expert opinion, and the Atlas Appellants were entitled, as they did, to attack the basis of it. *Commonwealth v. Alexander*, 5 S.W.3d 104, 106 (Ky. 1999) ("The opinion rendered by Sergeant Simms concerned a subject specifically within the knowledge of a trained accident reconstruction expert and was likely to assist the jury in understanding the circumstances in which Officer Alexander's cruiser collided with Nesbitt's vehicle.").

There is no rule that a party's experts must agree with one another or that a party cannot call a witness whose opinions differ from those of one of its experts. *Howard v. Kingmont Oil Co.*, 729 S.W.2d 183, 184 (Ky. App. 1987). Although Dr. Nichols may not have been willing to state conclusively, based solely on the toxicology reports, that the controlled substances in Jenkins's system did or did not impair his driving, we believe that Trooper Martin was well equipped to draw on his expertise and to give his opinion on what factors contributed to the accident. We cannot say that admission of Trooper's Martin opinions was either improper or unduly prejudicial to the Atlas Appellants.

### B. Closing Arguments

The Atlas Appellants next argue that the trial court erred when it refused to grant a new trial after the Garmons' counsel trial "intentionally and

repeatedly attacked the Atlas Appellants' trial strategy and improperly argued that the jury should consider the Atlas Appellants' alleged wealth, and otherwise engaged in personal attacks on defense counsel" during his closing arguments. However, the Atlas Appellants cite to only two instances where their trial counsel lodged objections to the closing arguments. The rest of the statements were not specifically objected to during the trial.

This was an emotionally charged trial that involved the untimely death of a wife and mother. The Garmons' counsel certainly gave a spirited closing argument. And some of those comments, when viewed in isolation, may have been over-the-top. However, we must consider the closing argument "as a whole while remembering that counsel is granted wide latitude during closing argument." *Robinson v. Commonwealth*, 647 S.W.3d 136, 143 (Ky. 2022) (internal quotation marks and citations omitted). Our job on appeal is to determine whether the closing argument inflamed the jury to such a degree that the Atlas Appellants were prejudiced. While we do not necessarily condone every comment made by the Garmons' counsel during his closing argument, we are satisfied that the comments when assessed in their proper context provide the Atlas Appellants no grounds for relief from the judgment. *Nami Resources Company, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018).

### C. Excessiveness of Damages

The Atlas Appellants next posit a related argument. They claim that counsel's improper arguments resulted in the jury awarding "excessive, grossly disproportionate" compensatory and punitive damages. Apparently recognizing that these arguments were not preserved below, they contend the damages in this case are so excessive and "palpably against the evidence, so as to shock the conscience and raise an [] inference that the jury was influenced by the passion prejudice."

"At the crux of [the Garmons' loss of consortium] claim[s] is compensation for loss of the most compelling of human relationships" that of wife and mother. *Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104, 111 (Ky. 2009). "Loss of consortium . . . does not lend itself to simple quantification. The entire inquiry rests on a speculative premise: the value of the decedent's affection." *Louisville SW Hotel, LLC v. Lindsey*, 636 S.W.3d 508, 519 (Ky. 2021). The jury is uniquely qualified to make such determinations, and "[i]f the verdict bears any reasonable relationship to the evidence of loss suffered, it is the duty of the trial court and this Court not to disturb the jury's assessment of damages." *Hazelwood v. Beauchamp*, 766 S.W.2d 439, 440 (Ky. App. 1989).

The Garmons testified extensively concerning the effect Marie's death had on them. Considering this testimony, we cannot say that the loss of

-17-

consortium damages awarded by the jury were so grossly excessive as to shock our conscience or to raise an inference that the jury's awards were the product of prejudice as opposed to being based on the evidence and instructions provided to them by the trial court.

The same analysis applies with respect to the pain and suffering damages the jury awarded. The Kentucky Supreme Court has explained:

> It is fundamental that a plaintiff is entitled to recover for all of her pain and suffering caused by a defendant; that is, that both physical and mental suffering merit recovery. *See Warfield Natural Gas Co. v. Wright*, 246 Ky. 208, 54 S.W.2d 666 (1932); *McVey v. Berman*, 836 S.W.2d 445, 449 (Ky. App. 1992). "On such an issue as this, where the extent of pain being suffered is not capable of objective valuation, there really is no satisfactory standard by which to measure an award of damages." *McClain v. Star Cab Co.*, 346 S.W.2d 539, 540 (Ky. 1961). Further, it is inherent within our jury system that juries may vary in their assessment of a proper award.

*Savage v. Three Rivers Medical Center*, 390 S.W.3d 104, 121 (Ky. 2012).

The evidence at trial showed that Marie was conscious while emergency personnel worked to extricate her from the wreckage and during her transport to the hospital. She conversed with medical personnel and, due to her own medical background, she was fully aware of the gravity of her injuries. She reported being in excruciating pain and expressed an understanding of the likelihood of her impending death once she was freed from the wreckage. "No

question, the award was monumental but so was the injury. Clearly, the relationship between the award and the injury in this case is not bizarre." *NKC Hosps., Inc. v. Anthony*, 849 S.W.2d 564, 569-70 (Ky. App. 1993).

We likewise fail to discern how the punitive damages award was excessive. "Due process requires appellate courts to perform a de novo review of the constitutionality of punitive damage awards." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 65 (Ky. 2018). "The touchstone for determining whether a punitive damage award is constitutional is whether the award is reasonable based upon the facts of the case." *Id.*

Although high, the award in this case was proportionate to the compensatory damages awarded by the jury and was made in the context of a wife and mother killed by a commercial truck driver. The evidence was clear that Jenkins had consumed controlled substances close in time to driving his truck, and that the Atlas Appellants had not drug tested Jenkins as they should have done. "All in all, it appears that the amount of the punitive damages award was rationally imposed by the jury to serve the deterrent effect for which punitive damages were designed[.]" *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 906 (Ky. 2008).

Finally, we give no credence to the Atlas Appellants' argument that the trial court's judgment was inconsistent because it stated in one portion that that the Garmons were "awarded $22,144,971.88" and in another that the amount of the

judgment was "$32,144,971.88." In the first instance, the trial court was clearly referring to the fact that the jury awarded the Garmons "$22,144,971.88" in *compensatory* damages as evidenced by the next sentence of the judgment which begins, "*further* the jury awarded $10,000,000.00 in *punitive damages*."

### E.  Jury Instructions

As we explained in *Hamilton v. CSX Transp., Inc.*, 208 S.W.3d 272, 275 (Ky. App. 2006):

> Alleged errors regarding jury instructions are considered questions of law that we examine under a de novo standard of review. *Reece v. Dixie Warehouse and Cartage Co.*, 188 S.W.3d 440, 449 (Ky. App. 2006). "Instructions must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky. 1981). "The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a correct verdict. If the statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury." *Ballback's Adm'r v. Boland-Maloney Lumber Co.*, 306 Ky. 647, 652-53, 208 S.W.2d 940, 943 (1948).

The Atlas Appellants first assert that the trial court erred in giving Jury Instruction No. 1, which instructed the jury that Jenkins had a duty of ordinary care, which included among others, "not operating his vehicle while under the influence of *intoxicants*." (Emphasis added.) According to the Atlas Appellants, given the testimony that Jenkins violated KRS 281A.210 by virtue of having any

-20-

substances in his system at all, this instruction treated violation of the statute as a strict liability offense, even though the Garmons did not seek to hold the Atlas Appellants liable for negligence *per se*.

One of Jenkins's duties was to obey all traffic laws, which necessarily included not operating his commercial dump truck with controlled substances in his system. Admittedly, the jury instruction at issue used the term "intoxicants" instead of "controlled substances." However, we fail to see how use of the term "intoxicants" was materially misleading in the context of the duty instruction. We also disagree that the duty instruction was tantamount to imposition of strict liability based on a statutory violation where the jury was specifically asked in Jury Instruction 2 to determine whether Jenkins's failure to comply with his duties "was a substantial factor in causing the death of Marie Garmon." Reading Instruction No.1 and Instruction No. 2 together, the jury could have found that Jenkins's violated his duty not to operate his truck with controlled substances in his system, but that said violation was not the proximate cause of Marie's death. *Carmical v. Bullock*, 251 S.W.3d 324, 328 (Ky. App. 2007) ("When examining jury instructions for error, they must be read as a whole.").

Appellants' second assignment of error relates to Instruction No. 2, which stated:

> It was the duty of the Defendants Atlas Excavating, Clint Russell and Amanda Russell to exercise the same of

ordinary care expected of a reasonable and prudent company/person in the administration and operation of their business. This duty included exercising ordinary care by:

(a) Ensuring the qualification and fitness of their employees;

(b) Ensuring that their equipment and vehicles were properly maintained;

(c) Conducting drug screening as required by law;

(d) Maintaining proper records and documentation;

(e) Complying with all applicable laws and regulations;

(f) Hiring only competent and qualified drivers;

(g) Not to retain a driver that was not qualified to operate a commercial motor vehicle; and

(h) Properly supervising drivers to ensure that they are qualified to operate a commercial motor vehicle.

The Atlas Appellants argue that they are not "insurers" of safety and should not have been held to a higher care standard, and further, the requirement that they were to comply with all applicable laws and regulations was undefined. The Atlas Appellants did not tender an instruction regarding Atlas/Russells, and they did not otherwise preserve this objection. Their failure to do so prevents our review. *See* CR[8] 51.01(3) ("No party may assign as error the giving or the failure

---

[8] Kentucky Rules of Civil Procedure.

-22-

to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection."). Furthermore, even if the Atlas Appellants had properly preserved this objection, we cannot agree that the instruction, which was predicated on a duty of "ordinary care" was calculated to mislead the jury into believing that the Atlas Appellants owed a heightened duty of care.

### F. Evidence of FMCSA[9] Violations

The Atlas Appellants complain that the trial court erred in allowing Trooper Martin to offer his opinion regarding Atlas's failure to comply with its duties under the FMCSA. According to the Atlas Appellants, introduction of this evidence was improper and violated the law of the case doctrine because the trial court had previously determined that the evidence did not tend to establish that Jenkins was not qualified to operate a commercial dump truck at the time of the accident. Notably, this conclusion was made in the context of granting Mago's renewed summary judgment motion.

The law of the case doctrine is "predicated upon the principle of finality." *Public Service Commission of Kentucky v. Metropolitan Housing Coalition*, 652 S.W.3d 648, 652 (Ky. App. 2022). It bars the relitigation of issues

---

[9] Federal Motor Carrier Safety Act.

finally decided in prior appeals arising out of the same case. *Armstrong v. Estate of Elmore*, 647 S.W.3d 214, 217 (Ky. 2022). The order at issue is an interlocutory trial court order, not a final appellate order. Moreover, the trial court's prior ruling on the FMSCA violations was based, in part, on the fact that Mago would not have had access to "Atlas driver files or Atlas maintenance records so Mago would not have been in a position to be aware of any regulatory violations regarding inadequate documentation." The fact that the Atlas Appellants' FMSCA violations were not relevant to the Garmons' claims against Mago does not mean the alleged violations were not relevant to the Garmons' claims against Appellants. In fact, we believe such alleged violations by the Atlas Appellants were in fact relevant. *See McGuffey v. Hamilton*, No. 2018-CA-001644-MR, 2020 WL 5268044, at \*10 (Ky. App. Sep. 4, 2020).[10]

### III. APPEAL NO. 2020-CA-0174-MR

In addition to suing Jenkins, Atlas, and the Russells, the Garmons asserted independent negligence, vicarious liability and punitive damages claims against Mago. However, the trial court granted summary judgment to Mago prior to trial. On appeal, the Garmons assert that material issues of fact exist making the trial court's judgment in favor of Mago erroneous as a matter of law. They request

---

[10] Unpublished opinions are not binding authority but may be considered pursuant to Kentucky Rules of Appellate Procedure ("RAP") 41.

-24-

this court to reverse the trial court's summary judgment orders and remand their claims against Mago for a jury to assess its culpability.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute.

The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022). "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*,

202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). The standard of review for an appellate court is *de novo* because only legal issues are involved. *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020).

### A. *Vicarious Liability*

"A principal may be held vicariously liable for the negligent acts of his or her agent, but generally is not held liable for the conduct of an independent contractor." *Nazar v. Branham*, 291 S.W.3d 599, 606 (Ky. 2009). "Under Kentucky law, the right to control is considered the most critical element in determining whether an agency relationship exists." *CSX Transportation, Inc. v. First National Bank of Grayson*, 14 S.W.3d 563, 566-67 (Ky. App. 1999).

Mago's primary business is the paving and resurfacing of roads. At the time of the accident Mago had a contract with the Commonwealth of Kentucky to pave a portion of Bluegrass Parkway. Mago uses dump trucks to transport asphalt from its plant to its job sites. While Mago has some of its own dump trucks, it also contracts with third parties to haul asphalt. At the time of the

accident, Mago had a contract with Atlas to haul asphalt, and Jenkins was working for Atlas hauling asphalt between Mago's plant and Bluegrass Parkway at the time of the accident. Mago had been using Atlas to perform dump truck hauling for it since about 2003.

In the contract with Mago, Atlas agreed to provide all trucks and drivers for the job and to be responsible for all obligations and expenses pertaining to the operation of the trucks, including insurance and "any other liabilities which may arise from such operation." The contract referred to Atlas as an independent contractor, and that it was Atlas's responsibility to comply with all federal and state requirements relating to its trucks and drivers. Jenkins was paid by the hour at a rate set by Atlas, and he reported directly to Atlas.

The trial court's analysis regarding whether Atlas/Jenkins were independent contractors or employees of Mago was centered on the nine factors set forth in RESTATEMENT (SECOND) OF AGENCY § 220. Properly focusing most heavily on the control element, the trial court determined that Jenkins was working as Mago's independent contractor at the time of the accident. To this end, it concluded that Mago contracted with Atlas to move asphalt from Point A to Point B and the details regarding the truck, the driver, the amount to pay the driver, the number of loads to be completed, and the like were up to Atlas and its drivers.

Although the Garmons argue the trial court's analysis overlooked several factual disputes, any discrepancy in the facts was not material. Jenkins testified that he communicated almost exclusively with Clint Russell regarding his job performance and duties. For his part, Clint explained that Mago would tell him where to pick up the asphalt and drop it off. However, Clint made clear that Mago did not control the drivers or any of the intricacies of its day-to-day operations, such as inspections or overseeing driving training and safety. He further explained that "nobody made a driver do anything they didn't want to." If a driver did not want to go to a particular job site, the driver was free to bring the truck back in that day. Clint further testified that Mago did not set any parameters for how many loads an individual truck driver needed to haul per day or week. Mago employee Jarrett Rummage's testimony did not contradict either Jenkins or Clint. Although Mago told Atlas where to pick up the loads, it did not dictate which drivers it had to use, the numbers of loads an individual driver was required to perform per day, when a driver might take a break, or even when a driver might decide he had done enough for the day. In fact, most of the time, the drivers were not even required to communicate directly with Mago personnel when they were picking up and dropping off their loads.

In sum, while Mago may have had general requirements in place for its independent contractors, such as the procurement of insurance, the testimony

agreed that Mago did not dictate or control Atlas's drivers. Thus, we cannot conclude that the trial court erred in concluding that Mago was not vicariously liable for Jenkins's tortious conduct.

### B. Inherently Dangerous/Ultrahazardous Work

An exception to the general rule exempting vicarious liability for independent contractors exists where the work being performed is inherently dangerous. *Miles Farm Supply v. Ellis*, 878 S.W.2d 803 (Ky. App. 1994). Before the trial court, the Garmons argued that hauling asphalt in a commercial dump truck is an inherently dangerous task, an argument rejected by the trial court. We find no error of law arising out of this conclusion. *Collins v. Liquid Transporters*, 262 S.W.2d 382, 383 (Ky. 1953).

### C. Liability as a Motor Carrier

Relying on federal law, the Garmons contend motor carriers are the statutory employers of their drivers, even if those drivers are independent contractors. While this may be the case, the operative question in this case is whether Mago was acting as a motor carrier when contracting with Atlas.

The Garmons focus heavily on the fact that Mago was registered as a motor carrier. While this may be true, this fact does not mean that Mago was acting as a motor carrier in this instance.

A motor carrier is one who provides motor vehicle transportation for compensation. 49 United States Code ("U.S.C.") §13102(14). Although a company may have the authority to act as a shipper, broker, and motor carrier, the authority to so act does not mean that the company was actually acting in that capacity. Rather, the court must focus on "the specific transaction at issue." *Schramm v. Foster*, 341 F. Supp. 2d 536, 548 (D. Md. 2004). Thus, we must determine whether as part of the specific transaction at issue Mago was acting primarily as a motor carrier for the Commonwealth, the party compensating it. Mago was engaged by the Commonwealth to repave a section of the road, not simply to transport goods from point A to point B. To assist in completing its contract to repave the road, Mago relied on Atlas to transport the asphalt. In this case, Mago was receiving compensation from the Commonwealth for paving a road, not hauling asphalt.

Under these particular facts, Mago was not acting as a motor carrier; it was acting as a road paver who needed to get asphalt to its own job site and hired an independent contractor to help it do so. As such, "it had no duty – nondelegable or otherwise –" that would make it liable for any statutory violations by Jenkins and/or Atlas. *See Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 785 (8th Cir. 2014).

### D. Direct Negligence

In addition to vicarious liability, the Garmons asserted a direct negligence claim against Mago predicated on its selection and retention of Atlas to act as its independent contractor. Even though the Garmons have appealed the trial court's decision to grant summary to Mago on their direct negligence claim, they nonetheless vehemently argue that we cannot vacate the jury's judgment. This is problematic. Unlike their vicarious liability claims, the Garmons direct negligence claims do not depend on the negligence of third parties; the Garmons seek to hold Mago directly liable for some portion of the accident.

"[L]iability among joint tortfeasors in negligence cases is no longer joint and several but is several only; and because the liability is several as to each joint tortfeasor, it is necessary to apportion a specific share of the total liability to each of them, whether joined in the original complaint or by third-party complaint, and the several liability of each joint tortfeasor with respect to the judgment is limited by the extent of his/her fault." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 779 (Ky. 2000). In this case, a jury has already determined that the Atlas Appellants and Jenkins were each fifty percent at fault for the accident. Throwing Mago into the mix would upset this determination; any second verdict finding Mago at fault would create inherently inconsistent verdicts with respect to

both damages and percentage of fault. In sum, we cannot grant the Garmons the relief they seek in relation to their independence negligence claim.

Even if we could do so, however, we do not believe the Garmons have demonstrated that the trial court erred as a matter of law in granting summary judgment to Mago. The Garmons' negligence claim is premised on the fact that Mago knew or should have known that Atlas was derelict in its duties in hiring and overseeing Jenkins. However, we agree with Mago that it was not required to, nor did it, have access to Atlas's records pertaining to Jenkins. As such, the Garmons failed to show Mago knew or should have known of any breaches by Atlas with respect to Jenkins such as its failure to drug test him as alleged by the Garmons making Mago entitled to summary judgment.

## IV. CONCLUSION

For the reasons explained below, we affirm the Anderson Circuit Court's judgments in both appeals before us.

ALL CONCUR.

BRIEFS FOR APPELLANTS ERIC
JENKINS, ATLAS EXCAVATING,
LLC, ATLAS TRUCKING, CLINT
RUSSELL, AND AMANDA
RUSSELL:

Todd S. Page
Lexington, Kentucky

John G. McNeill
Lexington, Kentucky

BRIEFS FOR APPELLANTS THE
ESTATE OF MARIE GARMON BY
DAVID GARMON,
ADMINISTRATOR; DAVID
GARMON, INDIVIDUALLY;
DAVID GARMON AS PARENT
AND GUARDIAN OF JOHN PAUL
GARMON; AND DAVID GARMON
AS PARENT AND GUARDIAN OF
MARLIE FORBES GARMON:

Steven Romines
Lawrence I. Young
Louisville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR APPELLEES THE
ESTATE OF MARIE GARMON, BY
DAVID GARMON,
ADMINISTRATOR; DAVID
GARMON, INDIVIDUALLY;
DAVID GARMON AS PARENT
AND GUARDIAN OF JOHN PAUL
GARMON; DAVID GARMON AS
PARENT AND GUARDIAN OF
MARLIE FORBES GARMON; JOHN
PAUL GARMON, INDIVIDUALLY;
KENTUCKY EMPLOYERS
SAFETY ASSOCIATION, INC.;
AND MARLIE FORBES GARMON,
INDIVIDUALLY:

Steven Romines
Lawrence I. Young
Louisville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR APPELLEE MAGO
CONSTRUCTION COMPANY, LLC:

Michael P. Casey
Lexington, Kentucky

Griffin Terry Sumner
Casey Wood Hensley
Louisville, Kentucky